(Decided 18th March, 1890.)

---

ELIZABETH ALEXANDER, and others *vs.* J. WILSON LEAKIN and HENRY G. MEDINGER, Administrators of JOHN C. KRAFT, and others.

*Decedent's estate—Non-resident claimants—Equity jurisdiction.*

Certain parties, non-residents, claimed as next-of-kin, against the administrators and others, the personal estate of a decedent in the hands of his administrators for distribution. The claimants were advised of the appointment of a day for the distribution of the estate under the direction and control of the Orphans' Court, but declined to go into said Court for the assertion of their claims, and filed a bill in equity to have the same recognized and established. HELD:

That the bill should be entertained, the complainants having the right to seek the aid of a Court of equity where a final distribution of the estate could be made, and all parties would be afforded ample protection from future responsibility and litigation.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of the Court below (DENNIS J.,) refusing the injunction asked

Alexander, *et al. vs.* Leakin and Medinger, Adm'rs, *et al.*

for, sustaining the plea and dismissing the bill.   The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Frederick W. Brune,* and *Stewart Brown,* for the appellants.

*Charles Morris Howard,* and *J. Wilson Leakin,* for the appellees.

FOWLER, J., delivered the opinion of the Court.

The late John C. Kraft, of Baltimore City, died intestate in February, 1889, leaving real and personal estate, but neither widow nor descendants.   On the application of some of the defendants, who with others named as defendants claimed to be next-of-kin of the decedent, letters of administration were issued by the Orphans' Court of Baltimore City, to J. Wilson Leakin and Henry G. Medinger, who proceeded thereupon to administer the personal estate of their intestate.   They duly passed their first administration account on the 17th October 1889, by which it appears that after the payment of all debts and expenses, there was a balance of nearly ten thousand dollars for distribution, which the administrators announced themselves ready to distribute.   Two sets of claimants made their appearance, each claiming the whole of the personal estate in the hands of the administrators,—one class being the appellants, who are all non-residents, all residing in the State of Ohio, except one of them, who resides in Indiana,—and the defendants constituting the other class,—their residence not being clearly disclosed by the record.

On the 17th of October, 1889, the Orphans' Court, on the petition of the administrators, passed an order ap-

Alexander, *et al. vs.* Leakin and Medinger, Adm'rs, *et al.*

pointing the 8th of November, 1889, for a meeting of persons entitled to distributive shares of the estate in their hands in pursuance of section 143, Art. 93 of the Code, to the end that payment and distribution might be then and there made under the Court's direction and control. The appellants made known their claim to the administrators through their counsel in Baltimore City, claiming as next-of-kin to the entire exclusion of the appellees. This claim, however, was denied and repudiated by the administrators, who informed the appellants that the appellees, other than said Leakin, who is their counsel and one of the administrators, had set up, through him, a claim to the intestate's personal estate as his next-of-kin. Whereupon, the appellants, on the 1st of November, 1889, filed their bill setting forth the facts above recited, and praying for the aid of a Court of equity in procuring proof requisite to establish their said claims, and that their testimony may be preserved and perpetuated; that the personal estate of said deceased may be brought into equity, and administered therein, and distributed to them; that the appellees may be required to set forth their claims, and produce strict proof thereof; that the administrators may be enjoined from making any distribution until the questions raised by the bill have been determined; for an order of publication against any of the defendants who may be non-residents; for subpœnas against all the defendants; and for general relief. To this bill two of the defendants, Messrs. Leakin and Medinger, the administrators, filed a plea, alleging that a Court of equity ought not to take jurisdiction of the matters alleged in the bill, because the distribution of the estate of their intestate is in the possession of the Orphans' Court of Baltimore City; that upon the petition of said administrators a day, the eighth of November, 1889, had been appointed by them and approved by said Court for a meeting of persons

entitled to shares of said estate; that notice of said meeting had been given by publication as required by said order, and that the counsel of the appellants had also been advised of said meeting; that appellants declined to go into the Orphans' Court to assert their pretensions, and on the 1st of November, 1889, filed the present bill.

The sole question, then, is whether a Court of equity should entertain this bill.

There can be no doubt as to the power of the Orphans' Court generally to fully administer the estate of deceased persons, for the Code, Art. 93, sections 230, 231, provides that it shall have power to "superintend the distribution of the estates of intestates," and "to examine, hear, and decree upon all accounts, claims, and demands existing  *  *  between legatees or persons entitled to any distributive share of an intestate's estate, and executors and administrators, and may enforce obedience to and execution of their decrees in the same ample manner as Courts of equity." And its power extends also to the settlement of all disputes in regard to pedigree between persons claiming as next-of-kin. *Blackburn, et al. vs. Craufurd, et al.*, 22 *Md.*, 447. But it was long ago recognized as possible that cases might arise in the distribution of decedents' estates which would demand the larger powers of an equity Court properly and satisfactorily to deal with the subject-matter or the parties.

And accordingly in *Hewitt's Case*, 3 *Bland*, 184, the Chancellor said : "The power to make a distribution  *  *  *  of the personal estate remaining in the hands of an administrator has been conferred upon the Orphans' Court, with which this Court should not interfere, except on account of some special circumstances, to which the powers of the Orphans' Court may not be altogether adequate." It appears from the bill that all of the

Alexander, *et al. vs.* Leakin and Medinger, Adm'rs, *et al.*

appellants, and perhaps some of the appellees, are non-residents. The former refuse to appear in the Orphans' Court, and that Court, it must be admitted, has no power to issue process to bring them in or make publication against them. In order to meet this difficulty, however, it is suggested by the appellees, that the non-residents or their counsel had actual notice of the proceedings in the Orphans' Court, in the manner alleged in the plea, and that having declined to avail themselves of that opportunity to come in, they are bound by the proceedings in that Court as fully as if there in person or by attorney. But certainly mere knowledge on the part of a non-resident defendant of the pendency of a suit in one of our Courts cannot of itself confer jurisdiction. Notice must be given, either by summons or publication, and, as we have said, the Orphans' Court has power to do neither so as effectually to bind the non-resident claimants.

What was the effect of the publication made by the administrators in the manner alleged in their plea? Of course the distributees, as well as the administrators, are entitled to a remedy which will afford full protection against future responsibility or litigation. The administrator should be able to distribute the estate, and be certain that such distribution is final and conclusive, while the persons to whom he distributes should be made, if possible, equally secure. It was contended on the authority of *Shriver and Dwyer vs. State, use of Reister*, 65 *Md.*, 278, that proceedings, under section 143, would at least have given ample protection to these administrators. But this case and that differ in a very material fact. There the distribution was made in total ignorance of the existence of the non-resident claimant, the administrator never having heard of him until several years after the estate was settled and distributed. Under these circumstances, this Court said in that case

that unless one of these sections (138, or 139, or 143 of Art. 93,) is followed, no *ex parte* distribution will afford protection to the administrator against the claim of a party excluded therefrom—implying that if the administrator had proceeded under either of these sections, he would have been entirely exonerated. In reference to section 143, the only one in question here, quoting from *Conner, et al. vs. Ogle, et al.,* 4 *Md. Ch. Dec.,* 450, the Court say "in most cases an administrator would be safe in acting under the direction and control of the Orphans' Court." But we do not think this is one of those cases. Here the administrator not only knows that there are a number of non-resident claimants, but is fully informed of the grounds of their claims and their places of residence. If, as we have said, the Orphans' Court cannot compel such parties to come in and submit themselves to its jurisdiction, we think it is the right of the appellants to seek the aid of a Court of equity where all parties will be afforded ample protection from future responsibility and litigation.

Of course, ordinarily, an administrator can safely proceed under section 143, and very frequently estates are distributed by careful and prudent persons at their own risk, without the aid of the Orphans' Court, with safety to themselves and all parties interested.

What would be the predicament of the appellees if the estate be distributed to them under section 143? In the case of *Zollickoffer, Ex'r vs. Seth, Adm'r,* 44 *Md.,* 371, it was held that while, under the terms of the statute, *the administrator* would be exonerated from the claim of a creditor after settlement and distribution, yet neither the statute nor justice required such exoneration to be extended to the legatee or distributee, in the absence of any default on the part of the creditor. The estate of the decedent is liable for all his just debts, and the fact that a creditor, without fault, has

not exhibited his claim to the administrator before distribution is not a valid reason why the distributees should not pay it to the extent of the estate received by them.    And it was, therefore, held in that case that the distributee was liable to a creditor of the intestate, under the circumstances there shown.

We can see no reason why one claiming as next-of-kin should be in a worse plight than a creditor.    The law ought to and will afford both of them ample opportunity to establish their respective rights.    Of course, neither the creditor, nor one excluded from the distribution, can enforce his claims, unless proceedings are had for that purpose at the proper time, and in the proper tribunal. But, as we have seen, the appellants, being non-residents, could not be summoned by the Orphans' Court, nor could it order publication so as to bind them, and protect the appellees as distributees.    We do not think, therefore, that the proceedings under section 143 in the Orphans' Court, insisted upon by the administrators, would afford safety and protection to any of the parties interested.

And, apart from these views, it would seem upon authority that when the administrators denied and repudiated the appellants' claim, they had a right to appeal to a Court of equity.    In the case of *Conway, et al. vs. Green's Adm'r,* 1 *Har. & J.,* 151, it was held that a distributee may support a bill in equity against an administrator for a share of an intestate's estate.    And in *Woods, et al., Ex'rs vs. Fuller, et al.,* 61 *Md.,* 457, Judge STONE, delivering the opinion of the Court, said:    The legatees have a full and complete remedy by an action at law on the testamentary bond of the executors, if their legacies are improperly withheld from them,    *    *    *    or the legatees have *a right* to file their bill in equity against the executors showing both the character and the amount of their legacies *and claiming the same.*"

And in the case of *Conway vs. Green's Adm'rs,* just referred to, distributive shares and legacies are put upon the same basis. The appellants, having demanded their shares of the estate in the hands of these administrators, and their demand having been refused, we think it was full time for them to seek the aid of equity, where alone, under the facts of this case, a final and conclusive distribution of said estate can be made.

*Decree reversed, and*
*cause remanded.*

(Decided 18th March, 1890.)