Myers and Horwitz, Adm'rs *vs.* Forbes, *et al.*

(Decided 16th June, 1891.)

---

ALEXIUS J. MYERS and BENJAMIN F. HORWITZ, Administrators d. b. n. c. t. a. of CHARLES MYERS *vs.* MARY GENEVIEVE FORBES, by her husband, GEORGE FORBES, and others.

*Administrators de bonis non cum testamento annexo—Power of the Orphans' Court—Equity jurisdiction.*

A testator devised and bequeathed to his wife, whom he appointed his executrix, the residue of his estate during her life, and clothed her with full power to sell and convey, and also to lease, the whole or any part of the same. He directed that the proceeds of any sales she might make, should be invested for the benefit of his estate. The will also provided that upon the death of the wife, the residue should pass to such of their children and grand-children as she might by will appoint, and upon her failure to appoint, it should go to their children and descendants in the same manner as if the testator had died intestate. The executrix filed in the Orphans' Court an inventory of the personal estate, but failed to include therein certain property which she supposed to be in fee, but which was in fact subject to a ground rent of one cent; nor was it embraced in her account

as executrix.  Afterwards, supposing that she had power under the will, she sold and conveyed the property in fee, and obtained from the Circuit Court a ratification of the sale.  The purchaser divided the property into lots and leased them, and conveyed the reversion, together with the rents issuing thereout, to the executrix who purchased them in the exercise of her power to make investments under the will of her testator.  This investment was ratified by the Circuit Court.  HELD:

That the failure of the executrix to include in her inventory and account said leasehold estate, did not give the Orphans' Court power to pass an order to administrators *de bonis non cum testamento annexo*, appointed after the death of the executrix, to sell the sub-ground rents, as they never belonged to the testator, he having died before they were created, and the Circuit Court, as a Court of equity, had rightfully acquired jurisdiction over them.

APPEAL from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, BRYAN, and McSHERRY, J.

*S. Gross Horwitz,* and *Benjamin F. Horwitz,* for the appellants.

The following authorities were referred to : *Smith vs. Doe, ex dem. Dennis,* 33 *Md.,* 449; *Neal, et al. vs. Charlton,* 52 *Md.,* 498; *Wilson vs. McCarty,* 55 *Md.,* 280; *Scott vs. Fox,* 14 *Md.,* 388; *Alexander vs. Stewart,* 8 *Gill & J.,* 244; *Cuthbertson vs. Irving,* 4 *Hurl. & Nor.,* 756, 757, 6 *Hurl. & Nor.,* 135; 1 *Smith's Leading Cases,* (*Ed.* 1888,) 202; *Doe, dem. Jackson vs. Wilkinson,* 3 *Barn. & C.,* 413.

*Edward Otis Hinkley,* for the appellee, Mary Genevieve Forbes.

*John N. Steele, John E. Semmes,* and *Francis K. Carey,* filed a brief for the appellee, The Baltimore Trust and Guarantee Company.

Myers and Horwitz, Adm'rs *vs.* Forbes, *et al.*

McSHERRY, J., delivered the opinion of the Court.

Charles Myers by his will, executed in May, 1862, devised and bequeathed the residuum of his estate to his wife Mary E. Myers for and during the period of her life, and clothed her with full power to sell and convey, and also to lease, the whole or any part of his property. He directed her to invest for the benefit of his estate the proceeds of any sales she might make, and authorized her to alter or change such investments as often as she might think proper. The will further provided that upon the death of Mary E. Myers, the residuum should pass to such of the children and grand-children of the testator as his widow might by last will and testament appoint, and upon failure to make an appointment the property constituting the residuum was given to his children and descendants in the same manner as if he had died intestate. This will was duly admitted to probate in Baltimore City, and letters testamentary were issued to Mary E. Myers, the executrix. She filed in the Orphans' Court an inventory of the personal estate, and in 1864 settled her first and only account as executrix. In that account she charged herself with the property described in the inventory just alluded to, and also with the proceeds of the sale of some real estate; and after being given credit for sundry debts and expenses paid, she was allowed a further credit "for the residue of the estate retained by her as the widow of the deceased, for the purposes and subject to the conditions and provisions set forth in the will." This residue consisted of furniture, plate, leasehold property, and some shares of the capital stock of incorporated companies. A part of the property owned by Charles Myers at the time of his death consisted of a tract of leasehold ground on Argyle and Myrtle avenues in Baltimore City. It seems this property was supposed by the executrix to be in fee, but it was, in fact, subject to a rent of one cent. At all events she did not include it in the inventory filed in

the Orphans' Court, and did not embrace it in the account there stated and settled by her. She, however, entered into possession of it, paid the taxes on it, and exercised acts of ownership over it. In March, 1872, Mrs. Myers as "trustee under the will of Charles Myers" filed an *ex parte* petition in the Circuit Court of Baltimore City setting forth a statement of her powers under the will—a. copy of which will she exhibited as a part of the petition—and stating that in the exercise of those powers she had sold and agreed to convey a lot of ground, part of the estate owned by her husband at the time of his decease, and praying that the sale might be ratified by the Court. After due publication of an order *nisi,* the sale was finally ratified by the Court on the seventeenth of April, 1872. In 1874 she filed a second report praying that another sale made by her in the same manner, might be ratified. This was done. A third report relating to the sale of still other property, was made in 1876; and in 1887 a fourth report covering sales of the property treated by her as fee simple, but which was in reality subject to the rent of one cent, was filed, and the sales were ratified in January, 1888. In February, 1888, her fifth report of sales was ratified and on July 3rd, 1890, a report of investments made by her was also ratified. Part of the property embraced in the fourth report, and lying, as we have stated, on Argyle and Myrtle avenues, was sold to Frank W. Trimble, and on the nineteenth day of January, 1888, was conveyed by Mrs. Myers to Mr. Trimble. The deed recited that she made the conveyance in her own right as widow and also by virtue and in pursuance of the power and authority vested in her as devisee under the will of Charles Myers. On the twenty-first day of January, 1888, Mr. Trimble leased the property thus conveyed, to Alice H. Shannon, dividing the same into twenty-one lots. On the same day Mr. Trimble conveyed the reversion in certain of the lots so leased by him, together with the rents issuing

thereout by virtue of said lease, to Mary E. Myers, who purchased them in the exercise of her power to make investments under the will of her husband. This investment was ratified by the Circuit Court on July the third, 1890. By means of these conveyances Mrs. Myers converted the vacant ground which was subject to the rent of one cent, but which she had regarded as real estate, into ground rents and cash, no money having passed from her to Trimble in the transaction, and Trimble having paid for the property purchased by him from her by reconveying the reversions and the rents issuing out of the lots named in his deed to her, and by accounting to her for a certain amount of cash.

Mrs. Myers died in the summer of 1890, leaving a will in which she unsuccessfully attempted to execute the power of appointment conferred upon her by the will of her husband. Shortly after her death the appellants were appointed administrators *de bonis non cum testamento annexo* of Charles Myers, and on October the twenty-seventh they returned to and filed in the Orphans' Court of Baltimore City an inventory embracing part of the estate of Charles Myers, which Mary E. Myers, in her account as executrix had been allowed to retain for the purposes and subject to the provisions of the will of her husband, as already stated; and also embracing the ten sub-ground rents created on January the twenty-first, 1888, in the transaction between Trimble and Mrs. Myers. On November the first, 1890, the appellants procured an order to be passed by the Orphans' Court, authorizing them to sell the property described in this inventory, and they subsequently sold, at private sale, some shares of stock, and later, at public sale, the sub-ground rents. They reported these sales to the Orphans' Court, whereupon exceptions were filed, and ultimately the Orphans' Court sustained the exceptions and rescinded the order of November the first, 1890, which had authorized the sales

to be made.　From this determination the administrators
*d. b. n. c. t. a.* have appealed.

Generally speaking an administration in the Orphans'
Court by an executor or an administrator *de bonis non,
cum testamento annexo*, is necessary to confer title upon a
legatee, but there are some qualifications of this rule.
For instance in *Matthews vs. Turner and Woodyard*, 64
*Md.*, 109, it was held that the title of a legatee to pro-
perty *specifically* bequeathed did not depend upon the in-
ventory returned by the executor, nor necessarily upon
the orders of the Orphans' Court.　And the reason given
was, that by the will itself the legatee gets an *inchoate
title*, and when the debts are paid and the executor as-
sents to the delivery of the property to the legatee, the
title of the latter becomes perfect.　And so where trusts
exist, it may frequently be preferable to invoke the more
comprehensive jurisdiction of a Court of equity in ad-
justing and settling a decedent's estate.　There can be
no doubt of the powers of a Court of equity in the exer-
cise of its general jurisdiction in cases requiring its inter-
position, to superintend the administration of assets and
decree distribution amongst the legatees and distributees,
and to compel executors and administrators faithfully
to discharge their trust. *Barnes and Ferguson vs. Compton's
Adm'rs*, 8 *Gill*, 397; *Davis, Adm'r vs. Clabaugh, Ex'r*,
30 *Md.*, 508.　*Sec.* 81 of *Art.* 16, of the Code was designed
merely to provide against any construction of the testa-
mentary law of the State to affect the general jurisdiction
of chancery in regard to trusts.

When a case involving the construction of the wills of
Charles Myers and Mary E. Myers was before us during
the last October term, (*Myers, et al. vs. Safe Deposit &
Trust Company*, 73 *Md.*, 413,) this Court held that the
distribution made in the Orphans' Court in 1864 by Mrs.
Myers, of the leasehold and other personal property
mentioned in her inventory, was a complete and final dis-

Myers and Horwitz, Adm'rs *vs.* Forbes. *et al.*

tribution to herself for life, and to the persons entitled in remainder under the will of her husband, and that consequently, no part of that property passed to the administrators *d. b. n. c. t. a.*

Now Mrs. Myers, supposing that the lot of ground on Argyle and Myrtle avenues was held in fee, did not include it in her inventory or mention it in her account as executrix. By reason of this omission the administrators *d. b. n. c. t. a.* of Charles Myers, claimed the right to sell, not that identical leasehold estate as it had been held by Charles Myers, but the ten sub-ground rents created in the transaction with Mr. Trimble long after Charles Myers' death; and this the Orphans' Court has decided these administrators cannot lawfully do. These sub-ground rents never in fact belonged to Charles Myers, because he died twenty-six years before they were created. They were not assets which he owned at the time of his death, or which passed to his executrix from him; and they could not possibly have been included by her in the inventory which she filed, or the account which she settled. They were created by Mrs. Myers and Mr. Trimble in pursuance of her power under her husband's will, to sell any part of his property, and to invest the proceeds for the benefit of his estate; and every step taken by her in creating and then in purchasing them was taken under the sanction of a Court of equity to whose jurisdiction, as we held in the case last referred to, she, as trustee, subjected herself as well as the trust estate committed to her charge. She was trustee for the persons entitled under the will of Charles Myers, after the termination of her own life estate in the trust property. As such trustee she sold the leasehold property to Mr. Trimble, believing it to be a fee simple estate. The Court of equity ratified that sale after having taken jurisdiction over the trusts sixteen years before. And then when she acquired from Trimble, as a part of the transaction with him, to

which allusion has been made, the reversion in this property and the rents issuing therefrom, she likewise obtained the sanction of the Court of equity to the investment thus made for the benefit of the trust estate. These sub-ground rents became part of the trust estate over which the Circuit Court had acquired jurisdiction, and which it is fully authorized to administer. The power of that Court to make distribution of the whole trust property of Charles Myers cannot be doubted or questioned. Upon what principle, then, when that Court has the whole estate within and under its jurisdiction, must a part be carried to the Orphans' Court for delivery there to the very persons to whom the entire residue of the trust property will be audited in the Circuit Court? Why are two partial settlements necessary? Why should the omission of Mrs. Myers to include a leasehold lot in her inventory and account (because she mistakenly supposed it to be in fee) deprive a Court of equity of a jurisdiction which it has already rightfully acquired over this same identical lot? We held heretofore that the trust estate was properly within the jurisdiction of the Circuit Court, and we see nothing in the facts of this case to justify the conclusion that the legatees in remainder under the will of Charles Myers cannot acquire a perfect title to these sub-ground rents without a resort to the Orphans' Court. Had there been no proceedings in the Circuit Court whereby its jurisdiction over the trust estate became established, no doubt all the personal estate of Charles Myers not included in the inventory filed by his executrix would have devolved upon the administrators *de bonis non cum-testamento annexo* for settlement in the Orphans' Court, as required by *sec.* 70, *Art.* 93 of the Code. *Wilson vs. McCarty*, 55 *Md.*, 280. But we distinguish the case at bar from those relied on by the appellants in this, that here a Court of competent and plenary authority has the property rightfully under its jurisdiction, and that

jurisdiction cannot be interfered with by another tribunal, notwithstanding the latter tribunal might have lawfully acted had the former not already assumed control. Especially is this the case when the only consequence resulting from an administration in the Orphans' Court will be to burden the estate with unnecessary costs and commissions.

A motion was made to dismiss this appeal, but as we have concluded to affirm the order of the Orphans' Court upon the merits, we do not deem it necessary to consider that motion.

For the reasons we have given, the order sustaining the exceptions to the sales reported by the administrators *d. b. n. c. t. a.*, and rescinding the order authorizing the sales to be made will be affirmed, and it is so ordered.

*Order affirmed, with costs.*

