Opinion of Judges Lindsay and Edwards.

## IN THE MATTER OF THE ESTATE OF CARL DAMBMANN.

*Barton & Wilmer* for petitioner.

*Henry C. Kennard* and *Edgar H. Gans* for respondent.

LINDSAY and EDWARDS, J.—

This matter comes before the Court by petition of the alleged widow and children of Carl Dambmann, deceased, charging that Charles Glaser, the administrator of the said deceased, has stated an account whereby he has misapplied the assets of the estate, and praying the Court to have the account re-opened, and directing the administrator to state a new and correct account.

This petition is fully answered, denying the claims of the petitioners, and also denying the jurisdiction of this Court to grant the relief prayed for, the administrator having passed his final account, and has therefore passed beyond the jurisdiction of the Court.

The question of jurisdiction being fully argued by the respective counsel, the Court, after a careful examination of the Code and the authorities submitted by counsel, the Court is divided in their conclusions, but the majority is of the opinion that the Court has full jurisdiction to hear the case under the general powers given to the Court by Sections 230, 231, 237 and 241 of Art. 93, and if the charges of the misapplication of the assets of the estate is fully proven the Court has full power to re-open the account and direct the administrator to state a corrected account.

In argument of counsel for the administrator it is claimed that the petitioners are guilty of laches; the Court has not been put in possession of any facts that they can pass upon to show that there has been laches upon the part of the petitioners at this stage of the proceedings, and therefore will hear the testimony upon the petition and answer.

Dissenting opinion by Judge Gans.

The question to be decided in this case is: Has the Orphans' Court the jurisdiction to control the distribution of estates made by the administrator outside of the statute of 1860, Secs. 137 and 143?

The opinion of the majority of the Court is that it has this jurisdiction, and from this I dissent.

The sections of the statute read as follows: "In case the surplus remaining in the administrator's hands, after the payment of all just debts exhibited or proved, or notified and not barred, or after retaining for the same, shall consist of specific property or articles mentioned in the inventory, or inventories, the administrator, if he cannot satisfy the parties, may apply to the Court to make distribution, and the

Court may appoint a day for making distribution, and by summons call on the said parties to appear, and the said Court may at the appointed time proceed to distribute. But if a majority in point of value shall neglect to appear, or, appearing, shall object to the distribution of the articles; or if the Court shall deem a sale of said articles, or any part of them, more advantageous, a sale shall be directed accordingly, and the rules herein laid down relative to a sale by the order of said Court shall be observed." And Section 143: "Any administrator shall be entitled to appoint a meeting of persons entitled to distributive shares or legacies, or a residue, on some day by the Court approved, and payment or distribution may be there made under the Court's direction and control."

Prior to the enactment of this statute, codified in the Code, Art. 93, Secs. 137, 143, the distribution of estates was no part of the business of the Orphans' Court, but was, under the law as it then stood, altogether in the hands and under the control of the administrator. The statute is not mandatory, but simply gives the administrator the privilege of protecting himself and his bond by complying with its provisions. If he chooses voluntarily to accept the privilege he and his bond are protected by the Court; if he choose, on the other hand, to reject the privilege, preferring to distribute himself, he, by so doing, deprives the Court of the power to protect either him or his bond, and assumes personally the whole liability for his act of distributing the estate.

The reason of this difference of jurisdiction and power of the Orphans' Court in relation to distribution is very natural and ought to be entirely clear. In the first case, that is, where the Court is in possession of its full power to protect the administrator, his bondsmen and the distributees in the matter of distribution, the compliance by the administrator with the provisions of the statute, has the effect of placing the matter of distribution in the hands of the Court, giving the Court a power over it which they had not before, and making the distribution the *act of the Court*, and not that of the administrator. The statute itself makes this entirely clear. Its language is, that the administrator "may apply to the Court to *make distribution* . . . and the Court

may, at the appointed time, *proceed to distribute*." Being thus an act of the Court, in view of the voluntary compliance with the statute by the administrator, and the Court having inherent control over its own acts, it very naturally and even necessarily takes jurisdiction to that extent. Distribution, thus becoming the act of the Court, and not that of the administrator, the Court takes direct power to control not only the distribution, in such a case, but also the administrator and distributees, except those who are nonresident, over whom, in view of its otherwise limited power, it can have no control.

But now on the other hand, the *lack* of this jurisdiction when the administrator does *not* comply with this statute, results just as naturally and necessarily. Here he does not choose to give the distribution to the Court, but to retain the right to distribute in himself and does actually himself make the distribution. The act, in this case, is *his individual act*, and not in any sense, or to any extent, the act of the Court. He assumes personally all the responsibility connected with the distribution. Over it the Court, in the nature of the case, can exercise no control. It is not within the scope of the Court's powers, and therefore it can have no jurisdiction over it, any more than it could have over non-resident claimants. This is the reason why the Court has not, and cannot have jurisdiction over it.

At this point it was suggested that in the account rendered by the administrator there are included, among other matters, the items of distribution, and that the Court has jurisdiction over the *account*. This suggestion, at best, is vague. It is true, as already said, that the Court has jurisdiction to change and correct its own acts. Its change or ratification of the expense account is its own act and therefore the Court may control it, but it would not assume the power to change the affidavit attached to any documents that may be brought before it, nor take official cognizance of any act made by a trustee concerning property that had passed from the administrator into his hands. These would not be the Court's acts, and therefore it would not, and could not, if it did attempt to control them. Just so in regard to distribu-

tion of the surplus when the statute has not been complied with. The act involved in it is not the act of the Court, but of the administrator, and the Court, for this reason, has nothing to do with it. In that case the law prior to this act prevails which gives it wholly to the administrator. It is, of course, the duty of the administrator to make distribution, but the Orphans' Court cannot compel him to make it, neither can it force him to render a distribution account. Therefore, instead of making the *account* the occasion and basis of the Court's jurisdiction over the distributive part of it, we are required to regard this part of it as not being there at all, or that it did not even exist, "so far as the Orphans' Court is concerned."

But suppose that the Court should, notwithstanding all this, and in spite of it, pass an order changing the distribution, with a view to bring it into harmony with what they might adjudge to be right, and command the administrator to re-collect the moneys already distributed by him to one set of claimants and pay it over to another set, would the administrator be bound to obey it? Clearly not. Could his letters be revoked in case of refusal? Again, surely not. No such order could be executed, for the reason, first, that in doing what he did the administrator acted under the law and with its express permission and sanction, and, second, because the Court could have no authority to forbid what the law has allowed. The law is greater than the Court—the latter being only the humble servant of the former. Having the legal right to make the distribution, the law will not, and no Court can punish him for making it, except for making it wrongly and fraudulently, and then this can be done only by the action of another Court.

If these several points can be established by law, then it is quite clear that the Orphans' Court cannot claim the jurisdiction in question.

Now turn briefly to some of the authorities, to see if the foregoing points are not fully sustained.

The Court of Appeals, in 68 Md. 512, 13, says, "That the passage of the administrator's first and final account, showing the amount of surplus in his hands was a complete settlement of the administrator, so far as the Orphans' Court is concerned. (1) He was not obliged to state a distribution account, or to make distribution under the supervision of that Court. (2) Though he could have done so if he had chosen to protect himself and his bond by adopting that course. (3) The law required him to make distribution, but he could have done it *in pais* without the order of any Court, if he chose to take the risk of paying the right amount to the right parties."

(1) That is the end then legally of the Court's power as to this point; it can go no farther. (2) The administrator is, as respects distribution, not under the control, in such case, of the Orphans' Court. This ought, indeed, of itself, be decisive of the whole question in controversy, for if the Court can't *compel* this, where is its jurisdiction over the subject of distribution, or what is the worth of it, if it have any? (3) By choosing, he might have gotten the protection of the Court. (4) By not choosing, he assumed the whole personal liability which the case involved, but not to the Orphans' Court, for its power, as already seen, has ended, so that whatever else that may remain undone which might require judicial action to do, must necessarily be taken to and be done by another Court. This necessity frequently arises in similar cases, and is not new or strange in the practice of the Orphans' Court.

In the case of Wilson vs. McCarthy, 55 Md. 283, the Court says in very clear language, that "to make a distribution an entire protection to the executor or administrator, it is necessary that such action be taken and such notice be given as the statute provides to justify the Court in making it."

(1) The Orphans' Court is not justified in extending protection unless this statute is carried out; that is, such compliance with it is a *necessary precedent condition* to the validity of the Court's jurisdiction to give protection, and just here occasion may be taken to say that this statute is referred to by all the cases relating to the jurisdiction of the Orphans' Court to control the matter of distribution, when the administrator choses to make the distribution himself without regard to the statute, and they teach without variation the same doctrine throughout.

In 12 Md. 420, the Court says "that where there is no appointment of a meeting of claimants, as provided by the testamentary act, and no directing the distribution, the proceedings are not conclusive upon any party effected thereby."

Not to comply with this act is to make the distribution *ex parte* only, and, as such, it cannot bind or control any persons affected by it. This being the nature of the proceedings in this case, it follows, that whatever order the Orphans' Court might now pass in relation to the distribution already made by the administrator, it could not bind any persons interested in it any more than they are now bound. What, therefore, would or could be its significance or value in any view, and especially in the case of non-resident claimants?

Only one more case—72 Md. 202. The facts in that case are almost entirely the same as in this one, except that there the administrator had fully complied with the statute and had thereby given the Orphans' Court the greatest power it could have to distribute the estate, but in this case, the administrator, choosing to distribute the surplus himself, gave to the Court no power whatever. There were there, as here, two sets of claimants, each claiming the whole surplus. The administrator filed a bill in the Court of Equity, asking that Court to take jurisdiction over the administration. This was strenuously resisted, but finally allowed by the Court on the ground that some of the appellees were non-residents, and that the Orphans' Court had no power to issue process to bring them into Court.

This is, as it must readily appear to be, a specially strong case, for the reason that the Orphans' Court there was clothed with its greatest power and the most plennary jurisdiction of which it was susceptible, and was yet declared to be incompetent to do the work effectually, while here, the difficulty in the way being precisely the same; namely, the existence of non-resident claimants, the Court was given no power or jurisdiction whatever by reason of the non-compliance of the administrator with the statute. If in that case the Orphans' Court was incompetent, how can it in this be competent? Or, in other words, if in that case the Orphans' Court had no jurisdiction, or, at least, no sufficient jurisdiction, how can it have it in this? Besides all this accumulation of authorities, to which others might readily be added, no Maryland case has yet been found (certainly none has been shown in the discussion) which contradicts the propositions enunciated in the cases just cited.

It must, therefore, be entirely clear that, even with the fullest powers and broadest jurisdiction which the Orphans' Court can possibly possess under our present laws, it would still be utterly incompetent to bring to final and satisfactory settlement a case such as the one now before this Court.