## JOHN H. BOLAND, JR., ADMINISTRATOR, ET AL. *vs.* DAVID ASH.

*Administration of Decedent's Estate—Equity Jurisdiction—
Concealment of Assets—Complete Relief—Assignment by
Distributee—Improper Parties to Bill.*

A court of equity will not assume jurisdiction of the estate of a decedent for the purpose of administering its assets, in the absence of special and unusual circumstances which render the powers of the orphans' court insufficient to afford adequate relief; and the facts should be sufficient to bring the case under some recognized head of equity jurisdiction.          p. 474

Where the complainant is entitled to a part of the relief prayed, a demurrer to the whole bill is properly overruled, unless there is a misjoinder of defendants.          p. 477

That plaintiff is assignee of a distributee of a decedent's estate and is therefore entitled to participate in its distribution, that the administrator, plaintiff's assignor, and a debtor of the estate, have fraudulently conspired to conceal a part of its assets, and that because they have exclusive control of all available sources of information as to the nature and extent of the assets concealed, plaintiff is not able, without the aid of equity, to take proceedings to compel the administrator to produce and account for them, and that his assignor has endeavored to deprive him of the benefit of her assignment to him by assigning her entire interest in the estate to the administrator, are facts sufficient to justify a court of equity in decreeing the discovery prayed, in annulling the assignment to the administrator so far as it affects plaintiff, and in determining the validity and effect of the assignment to plaintiff.          p. 477

A court of equity having assumed jurisdiction, on a bill by an assignee of a distributee of a decedent's estate, to decree a discovery as regards assets which the administrator, plaintiff's assignor, and a debtor of the estate, had fraudulently conspired to conceal, to annul an assignment which interfered with that to plaintiff, and to determine the effect and validity of the assign-

BOLAND v. ASH.

ment to plaintiff, *held* that the court should retain control over the subject of the suit until complete relief was afforded, and should require the administration of the estate under its supervision, although relief could eventually have been given in the orphans' court as to assets alleged to be concealed.        p. 478

The court was justified, under the circumstances, in supervising the administration, in requiring the administrator to discover and account for all assets of the estate, by whomsoever held, and in passing such restraining orders as were necessary to preserve the status of such assets and to prevent their waste or dissipation.        p. 478

An assignment, by a distributee of an estate, of "a sum equal to five per cent. of" her interest in the estate, *held* an assignment of a part of her interest itself, it not appearing that she was interested in any other fund or estate, and the expression having no other possible meaning in the connection in which it was used.        pp. 478, 479

The widow of an intestate had an interest in his estate in spite of a separation agreement by which she purported to release her marital rights therein, the only person who could assert that defense to her claim being the administrator, the estate being solvent, he being the only person other than herself interested in the estate, and he having elected to ignore the agreement.        p. 479

On a bill by an assignee of a distributee of a decedent's estate, asserting a conspiracy to defraud between the administrator, plaintiff's assignor, and decedent's late partner, *held* that no relief being prayed against the administrator's wife or against the administrator himself as a partner in decedent's firm, the bill was demurrable as to them.        p. 479

*Decided April 10th, 1924.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Bill by David Ash against John H. Boland, Jr., administrator of the estate of John H. Boland, deceased, and others. From an order overruling demurrers to the bill, defendants appeal. Affirmed in part and reversed in part.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*William Purnell Hall* and *William W. Powell*, with whom was *Paul Johannsen* on the brief, for the appellants.

*David Ash,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

The appeal in this case was taken from an order passed by the Circuit Court of Baltimore City overruling demurrers to an amended bill of complaint filed in that court by the appellee against the appellants. The facts set out in the bill and admitted by the demurrer are in substance these:

Margaret A. Boland, who had for sometime been living apart from her husband, John H. Boland, employed, during or prior to the year 1919, David Ash, Esq., an attorney practicing in Baltimore City, to institute and conduct an action for the alienation of her husband's affections against one Freda Annarino. Some years prior to the institution of that suit, in 1909, Mrs. Boland and her husband had separated as a result of domestic discord, and had executed an agreement in which she released all her marital rights in her husband's estate in consideration of the payment to her of $4,200. On or about July 9th, 1922, Boland, who was then living openly with Freda Annarino, died, supposedly intestate. Thereupon Freda Annarino made "prompt and strenuous" efforts to secure all the property of which he was possessed at his death which she could by any possibility reach. Her energy and speed aroused the apprehension of counsel for Mrs. Boland who, upon her husband's death, had repudiated the agreement she had made releasing her interest in his estate, and he felt the necessity of taking prompt action to shield and preserve the estate from the exhaustive searches and seizures of Freda Annarino. To that end, on July 10th, 1922, a bill was filed in Circuit Court No. 2 of Baltimore City by John H. Boland, Jr., the son of the decedent, against Freda Annarino, and as one of the immediate fruits of that litigation the defendant was prevented from securing a safety

deposit box rented by the decedent, which contained securities and other property valued at about twenty-five thousand dollars.

John H. Boland, the decedent, left, as his only heirs at law, John H. Boland, Jr., his son, and Mrs. Boland, his widow, unless she was barred from asserting any claim against his estate by the agreement which she had made in 1909. John H. Boland, Jr., took out letters of administration upon his father's estate, and then entered upon negotiations with Margaret A. Boland, his mother, concerning the validity and effect of that agreement, and as a result thereof it was agreed between them that the agreement should be disregarded, and that Mrs. Boland should receive one-third of the estate left by his father. At or about the same time certain claims of Freda Annarino to property in her possession, which she had obtained from the decedent, were contested by the administrator. Those differences were finally adjusted and settled, and for the purpose of carrying out the settlement John H. Boland, Jr., individually and as administrator etc., Margaret A. Boland, and Freda Annarino, filed a petition in Circuit Court No. 2 of Baltimore City, in which they asked that court to sign a decree allotting the property in dispute respectively to the administrator and Miss Annarino in accordance with an agreed schedule, and directing the payment from the funds of the estate to Mrs. Boland of five thousand dollars in satisfaction of her suit against Miss Annarino. That petition, which was sworn to by each of the parties to it, contains, among others, this statement: that the material issues in this case are as to the right, title and interest in, to and out of certain property, bank accounts and safety deposit boxes alleged to stand in the names of a certain John H. Boland, said *Fleta* Annarino or her pseudonyms, either or both of them; and that the only distributees entitled to distribution and devolution of the estate of said John H. Boland, lately deceased, are said John Boland, Jr., an only son of said John H. Boland, now deceased, and said Margaret A. Boland, the mother of said John H. Boland, Jr., and the widow of said John H. Boland,

deceased, in the proportion of two-thirds and one-third respectively."

Throughout all of these transactions Mr. Ash represented Mrs. Boland, and at times Mr. John H. Boland, Jr., and he expended much time and labor in his efforts to protect their interests. He tried the suit for alienating the affections of Mr. Boland, which Mrs. Boland brought against Freda Annarino, in the lower court and in the Court of Appeals, and participated in the various transactions which preceded and resulted in the settlement referred to.

Under her original contract with Mr. Ash, Mrs. Boland agreed to pay him fifty per cent. of any amount recovered for her in her action for the alienation of the affections of her husband. When her husband died, however, and she determined to assert a claim against his estate as his widow, as though the agreement of 1909 had not been made, her original contract with Mr. Ash was cancelled by mutual consent, and she executed in lieu thereof a contract in the following form:

"I hereby retain David Ash as my attorney in all matters relating to the estate of my lately deceased husband, John H. Boland, and I agree to pay and do hereby assign unto him, said David Ash, a sum equal to 5 per cent. of any and all property and estate that I may receive in the premises or that may be received to my account or that of my assigns. And I authorize my said attorney, David Ash, for me and on my behalf to do all and each the matters and things in the premises that in his discretion are necessary or desirable.

"In consideration of this contract it is understood that said David Ash, in the event of a settlement instead of a trial in the case of Boland vs. Annarino in the Baltimore City Court for alienation of affections, will accept 25 per cent. of the amount of such settlement in lieu and stead of the 50 per cent. heretofore contracted for as a fee in said case.

"Done in the City of Baltimore this 16th day of October, 1922."

The effect of that paper was to assign to the appellee one-twentieth of the interest which Margaret A. Boland had in her husband's estate. That interest had been fixed by an agreement between her and the administrator, who was also the sole heir of the decedent, at one-third of the net value of the estate. Mr. Ash therefore became entitled to participate as a distributee in the distribution of the estate to the extent of one-sixtieth thereof.

Included among the assets of the decedent was an interest in the firm of E. L. Kaufman & Company, paint dealers, and his interest in the estate of Clara A. Boland, his mother, of which he was the administrator, and upon which at his death letters of administration were granted to John H. Boland, Jr. After Mr. Ash had completed the duties imposed by his contract of employment with Mrs. Boland and his right to his fee became consummate, Mrs. Boland, John Boland, Jr., and Edward L. Kaufman entered into a conspiracy to defraud him of the fee which he had earned. And to that end and in furtherance of the conspiracy they were guilty of the following acts, which we will set forth *iisdem verbis* in the language of the bill:

"Said three defendants did conspire together to defraud your orator of the said fee to which he is justly entitled; and that before your orator can have knowledge of the amounts justly due and payable unto him, in the premises, it will be necessary for him to have accountings and discoveries as prayed for in this amended bill of complaint; and that the said defendants, and each of them, did defraud your orator out of his said fee by the making of simulated agreements between themselves, the passing of assignments to that end and by other acts set forth in this bill of complaint, and by other acts to your orator unknown. * * * That said John H. Boland, Jr., returned inventories in the matter of each of the estates aforesaid; that said inventories thus returned by said John H. Boland, Junior, and each of them, are false, incomplete, or misleading, with the intention of making the distributive share of said Margaret A. Boland in the estate of

said John H. Boland, deceased, appear to be less than
it actually is, and said inventories are thus made with
a fraudulent purpose of defrauding your orator, said
Margaret A. Boland and others of what is justly due
and owing unto them in the premises. * * * That in
order to promote the purposes of said conspiracy here-
inbefore referred to, said Edward L. Kaufman, alleg-
ing that he mistrusted said John H. Boland, Junior,
assured your orator that no settlement would be made
in relation to the interest of the estate of said John H.
Boland in the partnership aforesaid, excepting by and
through your orator; but, despite said assurance, your
orator says that subsequent to said promise an adjust-
ment of the interest of the estate of said John H.
Boland, deceased, in the copartnership aforesaid, was
made or attempted to be made in the absence and with-
out the knowledge of your orator. * * * That your
orator has found on the public records what purports
to be an assignment of all of said Margaret A. Bo-
land's interest in the estate of her said late husband
unto said John H. Boland, Junior; as well as an indi-
cation that some settlement had been made or attempt-
ed to have been made of the interest of said John H.
Boland, deceased, in said late firm of Edward L.
Kaufman & Company on a basis of sixty thousand
dollars as the value thereof as an agreed amount for
the same. * * * and that thereupon a great number
of conveyances were attempted to have been made of
property of the estate of said John H. Boland, de-
ceased, and of said Clara A. Boland, deceased, re-
spectively; the latter named deceased being the mother
of said late John H. Boland, and his estate, probably
being entitled to her estate. * * * Your orator be-
lieves and, therefore, avers that said assignment and
conveyances aforenamed were knowingly made with
the fraudulent purpose of defrauding your orator of
his aforesaid fee and of his interest in said respective
properties; and that the said Edward L. Kaufman,
John H. Boland, Junior, and Margaret A. Boland
thus conspired together to commit the fraud here com-
plained of. * * * That a portion of the monies due

to the estate of said John H. Boland from the firm
of E. L. Kaufman and Company has, as yet, not been
paid over to said John H. Boland, Junior, adminis-
trator as aforesaid, or to himself personally; that there
is an outstanding note or notes representing said debt
or a part thereof, and your orator says that said mon-
ies as so remaining unpaid should stand as security
unto him, your said orator, for any money or monies
due unto him by either or any of the defendants to
this suit.  That ·neither the estate of said John H.
Boland, deceased, or the estate of said Clara A. Bo-
land, deceased, is yet fully administered; and your
orator says that owing to the peculiar nature of the
proceedings in an administration in the Orphans'
Court of Baltimore City he has not an adequate rem-
edy to protect him in the premises excepting by the
intervention of this honorable court."

Upon these facts the complainant asked for the following
relief:

"(A) That this honorable court may assume juris-
diction of the administration of the estates of said
John H. Boland, deceased, and of said Clara A. Bo-
land, deceased.

"(B) That said Edward L. Kaufman may be com-
pelled to make discovery of and full accounting for
the interest of said John H. Boland, deceased, in the
copartnership existing between said Edward L. Kauf-
man and said late John H. Boland at the time of his
death.

"(C) That said John H. Boland, Junior, person-
ally and in his respective capacities as administrator
of the estate of said John H. Boland, deceased, and
administrator of the estate of Clara A. Boland, de-
ceased, may be compelled by this honorable court to
give a full and true account of all and every the prop-
erty of either and both of said estates that have come
to his hands or knowledge, and each of them, and to
file herein a true, full and perfect inventory thereof.

"(D) That this honorable court may decree pay-
ment by the person or persons indebted in the prem-

ises unto your orator of the amount of fee found to be due unto him in the premises.

"(E) That this honorable court may declare the · interest in the estate of said John H. Boland, deceased, and the respective parts thereof, found to belong to your orator.

"(F) That this honorable court may declare the fee found to be due to your orator to be a lien on the respective properties in the estate of said John H. Boland at the time of his death.

"(G) That this court may issue its order forbidding and restraining said Edward L. Kaufman from paying out any balance of any monies, part of the estate of said John H. Boland, deceased, due unto said John H. Boland, Junior, individually, or as administrator as aforesaid; and forbidding and restraining said John H. Boland, Junior, from conveying, assigning or transferring any claim or ·claims that he may have against said Edward L. Kaufman for such monies; and from conveying or encumbering any property or properties that were heretofore a part of the estate of said John H. Boland, deceased, have been heretofore conveyed unto him, said John H. Boland, Junior, until the further order of this court.

"(H) That this court may set aside the aforesaid assignment of all of said Margaret A. Boland's interest in the estate of her late husband, said John H. Boland, unto said John H. Boland, Junior.

"(I) That your orator may have such other and further relief as his case may require."

To that bill the several defendants demurred on various grounds which in effect, however, may be reduced to these: (1) That the bill did not state a case for equitable relief; (2) that there was a misjoinder of defendants; (3) that it was multifarious, and (4) that as against Ethel Boland and as against John H. Boland, Jr., as a co-partner of the firm of E. L. Kaufman & Co., no relief was prayed. These demurrers the court overruled, and from that ruling the defendants appealed.

The principal question presented by the appeal is whether the facts stated are sufficient to justify the relief or any part of the relief prayed.

That, in this State, a court of equity may under certain circumstances assume jurisdiction of the estate of a decedent and have the assets of the estate of a decedent administered under its supervision is clear. *Garrison* v. *Hill,* 81 Md. 211; *Alexander* v. *Leahlin,* 72 Md. 199; *Koontz* v. *Koontz,* 79 Md. 364; *Fenby* v. *Johnson,* 21 Md. 119; *Hammond* v. *Hammond,* 2 Bl. 309 &c.; *Myers* v. *Forbes,* 74 Md. 360; *Hewitt's Case,* 3 Bl. 185 etc.; *Macgill* v. *Hyatt,* 80 Md. 257. But that under the practice in this State it will not do so in the absence of special and unusual circumstances which render the powers of the orphans' court insufficient to afford adequate relief, is equally clear. *Macgill* v. *Hyatt, supra; Hewitt's Appeal, supra.* And where the complainant has a full adequate and complete remedy in that court, equity will not interfere. But where by reason of some inherent and constitutional limitation of its powers, the orphans' court, the forum in which relief would be naturally and ordinarily sought, is unable to afford a complete and satisfactory remedy, then equity will lend its aid. That power in practice, however, in this State has rarely been exercised, unless it clearly appears that adequate relief cannot be had in the orphans' court, and has usually been treated as ancillary to the full and adequate administration by that court of its duties, powers and functions, and not as a substitute for them. In order to justify the intervention of a court of chancery in the administration of an estate in the orphans' court, therefore, it is necessary that the facts relied upon to support it should be sufficient to bring the case under some recognized head of equity jurisdiction, as for instance where fraud is alleged or a discovery sought, and they must also show that adequate relief cannot be had in that court. These general principles will be found stated in *Macgill* v. *Hyatt,* 80 Md. 256, where this Court said: "There can be no doubt that under the system prevailing in this State, the estates of deceased persons should ordinarily be administered and

finally distributed in that Court. * * * And in *Alexander* v.
*Leakin,* 72 Md. 199, * * * we said, citing section 230 of Code,
Art. 93, these courts 'have full power to take probate of wills,
grant letters testamentary and administration, direct the con-
duct and settling of accounts of executors and administrators,
superintend the distribution of the estates of intestates * * *
and to administer justice in all matters relative to the affairs
of deceased persons.' * * * It is true that in a number of
cases we have said that personal representatives and others
interested in the settlement of estates of deceased persons
may seek the aid of a court of equity, as in *Woods* v. *Fuller,*
61 Md. 459, where it was held that a trust having been im-
posed upon the executor, he may, if in doubt, have the direc-
tion of a court of equity as to how he shall discharge it;
distributees may file a bill in equity against an administrator
for their share of the intestate's estate, and a legatee may
adopt the same proceeding to recover a legacy. *Conway* v.
*Green,* 1 H. & J. 151; *Woods* v. *Fuller, supra.* And in
*Alexander* v. *Leakin,* just cited, the application to a court
of equity on the part of certain non-residents as next of kin
was maintained on the ground that the powers of the orphans'
court were not altogether adequate to afford complete protec-
tion and relief."

In *Woods* v. *Fuller,* 61 Md. 457, we said:

"It is very certain that the supervision of trusts is the
province of a court of equity, and that an executor who has,
in addition to his ordinary duties, a trust imposed on him
by his testator, has always, if in doubt, the right to ask, and
have the direction of a court of equity as to how he shall
discharge his trust.

"But it is equally certain that the orphans' courts of the
State are the tribunals in which, ordinarily, the estates of
deceased persons must be settled; and in order to give courts
of equity jurisdiction to superintend the settlement of an
estate, or to distribute the legacies at the instance and re-
quest of the executor, he must show some special circum-
stances, such as a trust devolved upon him by the will, and

about which he is doubtful, or at least something more than the mere payment over of a legacy after the debts are paid."

In *Curtis' Estate* v. *Piersol*, 117 Md. 172, where the Court through JUDGE PATTISON said: "Section 234 of article 93 of the Code of Public General Laws confers upon the orphans' court full power to take probate of wills, grant letters testamentary and of administration, direct the conduct and settling the accounts of executors, administrators, superintend the distribution of the estate of intestates, secure the rights of orphans and legatees and *to administer justice in all matters relative to the affairs* of deceased persons. As to such powers 'the courts of equity shall not interfere; except on account of some special circumstances to which the power of the orphans' court may not be altogether adequate.' *Hewitt's Case,* 3 Bland, 186; *Alexander* v. *Leakin,* 72 Md. 202; *Macgill* v. *Hyatt,* 80 Md. 256." And in *Redwood* v. *Howinson,* 129 Md. 592, in a very full review of the decisions in this State, the Court, speaking through JUDGE THOMAS, again affirmed and applied the principles we have stated.

The same principles are stated in *Woerner's American Law of Administration,* where it is said, page *1124: "But it must be remembered that courts of equity will afford relief in all cases where the powers of probate courts are inadequate to accomplish justice, being regarded, in this respect, like ordinary courts of law, and that hence accounting by executors and administrators may be enforced by courts of equity, although the original jurisdiction be vested exclusively in probate courts. And, on the other hand, a court of equity will not arrest proceedings commenced in a court of probate, although their jurisdiction be concurrent, unless some fact is shown which renders the court of probate inadequate to a full settlement," and at page 357 the same author, further discussing the same subject, says: "Hence, in this country, courts of equity do not generally interfere in the administration of estates, except in aid of the probate courts, where the powers of these are inadequate to the purposes of perfect justice, and then for the same reasons which induce them to

interfere with the jurisdiction of common-law courts. Where, for instance, an administrator dies before settling his administration account, and the same person is appointed his administrator, and also administrator *de bonis non* of his intestate, the proper tribunal before which to make the settlement is a court of chancery. So where it is necessary to restrain the sale of real estate in protection of the interest of the heirs, involving the accounting by the administrator; or to protect the estate against fraud or waste by the administrator where the probate court is powerless, or in case of collusion between the executor and a creditor, or, generally, where there is an evident mistake or fraud in the settlement, or the probate court, by reason of its limited powers, cannot administer proper relief."

Applying these principles to the facts before us, in our opinion, the complainant was certainly entitled to a part of the relief prayed and, as the demurrers were to the whole bill, they were properly overruled (*Miller's Equity,* sec. 134) even if the complainant is not entitled to all the relief prayed, unless there was a misjoinder of defendants.

These facts, reduced to their lowest terms, are that the complainant is an assignee of one of the distributees of the estate and is therefore entitled to participate in the distribution of it; that the administrator and one of the distributees and a debtor of the estate have fraudulently conspired to conceal a part of its assets, and that because they have exclusive control of all available sources of information as to the nature and extent of the assets concealed, the complainant is not able, without the aid of a court of equity, to take such proceedings as will compel the administrator to produce and account for them, and that his assignor has endeavored to deprive him of the benefit of her assignment to him by assigning her entire interest in the estate to John H. Boland, Jr., who is also the administrator.

That the facts stated, if true, are sufficient to justify the court in decreeing the discovery prayed, in annulling the assignment to Boland in so far as it affects the complainant and in determining the validity and effect of the assignment

to the complainant, we think is clear, but that they are suffi-
cient to warrant the court in assuming jurisdiction of the
administration of the estates of John H. Boland, deceased,
and of said Clara A. Boland, deceased, or in granting the
remaining relief prayed, is, we think, not so clear.

For if the complainant is informed of the nature and
extent of the assets of the estate said to be concealed by the
administrator, he may have a complete remedy in the or-
phans' court, where by appropriate proceedings he can have
it determined whether supposed assets said to be concealed
are assets of the estate, and if they are he can in that court
compel the administrator to account for them. But to secure
that relief the complainant might be required to resort to
several proceedings attended by delay and expense uncertain
in extent, all of which could be obviated and rendered un-
necessary if the equity court required the administrator to
administer the assets of the estate under its supervision.
Under such circumstances it is not the practice in this State
for courts of equity to relinquish their control over the sub-
ject matter of such a proceeding as this until full, adequate
and complete relief is afforded to all parties before it ac-
cording to their respective rights and interest therein.  *Jenks
v. Clay Products Co.,* 138 Md. 572; *Magin v. Niner,* 110
Md. 305. And upon the facts stated in the bill, even though
by the aid of this Court relief could eventually be had in the
orphans' court, in our opinion the lower court was justified
in supervising the administration of the estate of John H.
Boland, in requiring the administrator to discover and ac-
count for all assets properly belonging to that estate, whether
in his hands or the hands of another, and in whatever ca-
pacity held, and in passing such restraining orders as were
necessary to preserve the status of such assets and to prevent
their waste or dissipation.

In dealing with these questions we have assumed that there
is an assignment by Mrs. Boland to Mr. Ash of a part of her
interest in the estate and that she had an interest to assign.
We have done that because, while the assignment referred
to above is of "a *sum* equal to 5 per cent. of" her interest

in the estate instead of 5 per cent. of the interest itself, it is manifestly intended as an assignment of a part of the interest itself because it does not appear that she was interested in any other fund or estate and in the connection in which it was used it could have no other meaning. That Mrs. Boland had an interest in the estate is also manifest. John H. Boland died intestate, leaving Mrs. Boland to survive him as his widow. She would naturally have been entitled to participate in the distribution of the estate, unless she was barred by the separation agreement. The only person who could have asserted that defence, the estate being solvent, was the administrator, who was also, except Mrs. Boland, the only person interested therein, and he elected to disregard it, and to permit Mrs. Boland to share in the distribution as though it had not been made. Under such circumstances it cannot be said that Mrs. Boland had no interest in the estate.

In regard to the objection that there is a misjoinder of parties defendant, it is sufficient to say that there is nothing in the bill to justify the joinder of Ethel L. Boland, the wife of John H. Boland, Jr., or of John H. Boland, Jr., in the capacity of a co-partner with E. L. Kaufman in the partnership firm of E. L. Kaufman and Company as parties defendant thereto, and the demurrers respectively filed by them should have been sustained, and as to them the bill should have been dismissed.

Concerning the remaining grounds for demurrer, it need only be said that in our opinion they present no valid objections to the bill of complaint, and could not properly have affected the action of the lower court in dealing with it.

It follows from what we have said that so much of the order appealed from as overrules the demurrers interposed by John H. Boland, individually and as administrator of John H. Boland, deceased, and of Clara A. Boland, deceased, Margaret A. Boland and Edward L. Kaufman, must be affirmed, and that so much thereof as overrules the demurrer of Ethel L. Boland and John H. Boland, Jr., in his supposed capacity as a co-partner with Edward L. Kaufman

of the firm of E. L. Kaufman and Company, must be reversed and as to them the bill dismissed.

> *Order affirmed in part and reversed in part, and cause remanded for further proceedings in conformity with the views expressed in this opinion, and bill dismissed as to Ethel L. Boland and John H. Boland, Jr., in his capacity and only in his capacity as alleged partner with Edward L. Kaufman in the firm of E. L. Kaufman & Company. Costs to be paid by the appellants.*