COLONIAL TRUST COMPANY, Trustee,

*vs.*

FIDELITY AND DEPOSIT COMPANY.

L. GIBBONS SMART et al.

*vs.*

FIDELITY AND DEPOSIT COMPANY.

*Indemnity Bond—Reimbursement of Surety—Liability of Distributees—Nonjoinder of Parties.*

One who procured a bonding company to execute as surety a bond, executed by her as principal, to indemnify certain bankers against loss by reason of the issue of certain certificates, and who agreed in the bond to indemnify the bonding company against loss or liability on its part by reason of its execution of the bond, could not, in defense to an action by the company on account of such loss or liability, contend that the obligees had no right to require such a bond as a condition precedent to the issue of the certificates, and that the bond was therefore without consideration and void. pp. 124-127

Where a contract previously executed is agreed by the parties thereto to be futile and nugatory, they may abrogate it, and make a new contract. p. 126

Where the express promise of the principal on a bond, to indemnify a surety thereon against loss by reason of the latter's execution of the bond, was the consideration for such execution, the principal's promise could not be affected by the status of contracts between the principal and the obligee, not set out in the bond and entirely collateral to the contract between the principal and the surety, and of which the latter had no knowledge. pp. 126, 127

A bond having been given to indemnify certain bankers against loss on account of the issue by them of certain certificates in place of other certificates which had been lost, the action of the surety on the bond, when called upon by the bankers to save them from loss by reason of the finding of the lost certificates in the hands of holders in due course who had presented them for exchange, in making expenditures necessary for this purpose, was not voluntary, but was a compliance with the obligation of the bond, entitling the surety to reimbursement from the principal or the principal's estate.    pp. 124, 127

The estate of a decedent having, upon her death, been distributed in accordance with a deed of trust executed by her, the distributees were liable, to the extent of the amounts received by them, to a surety on a bond given by decedent to indemnify a banking firm for the issuance of certain debt certificates in place of others which had been lost, which bond provided that she should indemnify the surety against all loss thereunder, and under which bond the surety had been subjected to loss.                                           p. 127

A surety entitled to reimbursement from the distributees of the principal's estate is entitled to seek such relief in a court of equity.                                            p. 127

Each distributee of a decedent's estate, when called upon to reimburse a surety upon a bond, upon which decedent was the principal, on account of a loss to the surety by reason of the bond, is liable to make contribution in proportion to the amount received by him, subject to the qualification that only those who are solvent and within reach of the court's process are to be considered in determining the liability of the individual distributees.                                          p. 128

A bill seeking contribution from the distributees of a decedent's estate on account of a liability incurred by decedent, is defective if it fails to join as parties all the distributees who are not insolvent or non-resident.                p. 128

A decree against certain distributees of a decedent's estate for contribution by them, to reimburse plaintiff for loss incurred by the latter as decedent's surety, need not be reversed on account

of plaintiff's failure to join all the distributees who were solvent
and within reach of process, since the other distributees can be
brought in as defendants, or the amounts distributed to them
can be considered in determining the amounts to be contributed
by the distributees who were joined.                     p. 129

*Decided April 24th, 1923.*

Appeals from the Circuit Court of Baltimore City (CAR-
ROLL T. BOND, J.).

Bill by the Fidelity and Deposit Company of Maryland
against the Colonial Trust Company, trustee, L. Gibbons
Smart, Maude Peeples Smart, Mary B. Hunter, and others.
From a decree overruling demurrers to the bill, the Colonial
Trust Company, and the individual defendants named, sepa-
rately appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE,
THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and
OFFUTT, JJ.

*Howard P. Sadtler,* with whom were *Sadtler & Lyell* on
the brief, for the Colonial Trust Company, trustee, appel-
lant.

*Albert F. Wheltle,* with whom were *Charles F. Harley* and
*Michael James Manley* on the brief, for L. Gibbons Smart,
Maude Peeples Smart, and Mary B. Hunter, appellants.

*Washington Bowie, Jr.,* and *Francis Key Murray,* for the
Fidelity and Deposit Company, appellee.

OFFUTT, J., delivered the opinion of the Court.
At some time prior to August 10th, 1912, Abner Green-
leaf owned eight "Virginia debt certificates," having a face

value of $20,031.72. These certificates, which were obligations of the State of Virginia to pay to the holder thereof the amounts named in them and for which they were respectively issued, were negotiable and passed by delivery. Before the date referred to Abner Greenleaf appears to have lost or misplaced them, and to have made application ·to Brown Brothers, a brokerage partnership then acting as fiscal agents of the State of Virginia, for duplicates of the certificates which he had held, for on that date he, as principal, and the American Bonding Company of Baltimore, as surety, executed a bond in the penalty of $20,000 to Brown Brothers to "save harmless and indemnify the said Brown Brothers & Company, their heirs, executors, administrators, successors and assigns from and against all manner of damage, loss, injury, or expense they may suffer, sustain, or incur for or on account of any demand made upon them by any holder of said lost or mislaid certificates."

On August 28th, 1912, he executed in due form his last will and testament, in which he bequeathed to Corinne B. Greenleaf, his sister, all of his property, real and personal, and, on or about September 10th of the same year, he died. The will was probated on September 16th, 1912, and on October 7th of the same year Corinne B. Greenleaf sold these duplicate certificates. She was then informed by Brown Brothers that before the sale which she had thus made could be consummated it would be necessary, under the rules of the New York Stock Exchange, to issue new "original" certificates, instead of the "duplicate" certificates theretofore issued, and they appear to have required as a condition precedent to their issuing such certificates an indemnity bond in the penalty of $40,000 "in the place of" the bond executed by Abner Greenleaf.

She thereupon applied to the American Bonding Company to act as surety on the required bond, and in her application she agreed to "at all times indemnify, and keep indemnified, and save harmless the said company from and against any

and all liability asserted against said company and from and against all loss, liability, costs, damages, charges, counsel fees and expenses whatsoever, which said company shall or may for any cause, at any time, sustain, incur or be put to, for, or by reason or in consequence of said company having executed said bond." She then as principal and and the bonding company as surety executed to Brown Brothers a bond in the penalty of $40,000, containing the same condition as that set forth in the first bond which Abner Greenleaf had executed, and that bond (the $20,000 bond) was then returned to the surety and concelled.

On or about June 1st, 1913, the Fidelity and Deposit Company of Maryland reinsured all the business of the American Bonding Company and succeeded it as surety on the $40,000 bond.

On September 24th, 1913, Corinne B. Greenleaf executed a deed of trust to the Colonial Trust Company in which "the said Colonial Trust Company, trustee, was authorized and directed to pay over to the above mentioned defendants after the death of the said Corinne B. Greenleaf the following amounts of money, *i. e.*: Mary B. Hunter, $15,000, Theodosia Delaplaine, $5,000, L. Gibbons Smart, $10,000, Nettie F. Almony, $100, Catherine E. Johnson, $100, Sarah Martien Montgomery, $200, Maude Peeples Smart, $500. And the said deed of trust did further provide that the Colonial Trust Company, trustee, should invest and re-invest the sum of $10,000 in its discretion with full power to dispose of any such investments as they might deem expedient, and to collect the income therefrom for the support and education of Rosanna Elizabeth Cates, infant defendant in the above entitled cause, until she shall arrive at the age of twenty-one years, at which time the principal sum, to wit, $10,000, is to be paid to said Rosanna Elizabeth Cates; that by the residuary clause of said deed of trust all the rest and residue of said property belonging to said Corrinne B. Greenleaf was granted to the said Colonial Trust Company, trustee, to hold

for the use of Theodosia Cates for the period of ten years from and after the death of the said Corinne B. Greenleaf, with full power to the Colonial Trust Company to invest and re-invest said residue of said estate and to pay the income therefrom in quarterly annual installments to said Theodosia Cates; that at the expiration of ten years after the death of the said Corinne B. Greenleaf, the deed of trust provides that the principal of the said residue of said estate be paid to said Theodosia Cates absolutely free from any and all trusts."

Miss Greenleaf, the life tenant, died on January 6th, 1918, and the distribution directed by the deed was made under the direction of the Circuit Court of Baltimore City, and an auditor's account, distributing the following sums respectively to the beneficiaries named in that deed, was, on December 24th, 1918, finally ratified and confirmed, that is to say: To Mary B. Hunter, $14,250, to Theodosia Delaplaine, $4,750, to L. Gibbons Smart, $9,500, to Nettie F. Almony, $95, to Catherine E. Johnson, $95, to Sarah Martien Montgomery, $190, to Maude Peeples Smart, $475, to Colonial Trust Co., trustee for Theodosia Cates, $6,866, to Colonial Trust Co., trustee for Rosanna Elizabeth Cates, $9,500.

In October, 1920, while Brown Brothers were engaged in transferring to holders of Virginia debt certificates West Virginia 3½% twenty year gold bonds in exchange for such certificates, the original certificates formerly owned by Abner Greenleaf and claimed by him to have been lost or mislaid were presented for exchange, as were also the "new original" certificates issued in 1912. Brown Brothers then demanded that the surety named in the $40,000 bond purchase from them a sufficient amount of West Virginia gold bonds to enable them to deliver to the holders of the original certificates the bonds which those certificates entitled them to receive in exchange therefor. The surety, upon receiving that demand and before complying with it, made a thorough investigation to ascertain whether the holders of the original certificates presented for exchange had acquired them in good

faith. Finding nothing to justify a suspicion that they were not holders in good faith, it, in compliance with the demand, bought in December, 1920, the required bonds for $15,339.12 plus $65.40 for accrued interest, and the bonds thus purchased were delivered to the holders of the original certificates in exchange therefor, and the claim of Brown Brothers arising from their obligation to issue bonds to the holders both of the "lost" originals and the "new" originals of the debt certificates held by Abner Greenleaf was completely satisfied.

Before the original certificates were presented for exchange, the estate of Miss Greenleaf had been distributed in accordance with the provision of the deed of trust to the beneficiaries named in it, in the proportions referred to above. After purchasing the West Virginia gold bonds for $15,339.12, the surety demanded that "Mary B. Hunter, Theodosia Delaplaine, L. Gibbons Smart, Nettie F. Almony, Catherine E. Johnson, Sarah Martien Montgomery, Maude Peeples Smart, The Colonial Trust Company, trustee for Theodosia Cates and Rosanna Elizabeth Cates, an infant," the defendants in this case, who as beneficiaries under the deed of trust had received the amounts respectively audited to them in the distribution of Miss Greenleaf's estate, reimburse it for the purchase of such bonds. Upon their refusal to do so it filed the bill of complaint in this case in the Circuit Court of Baltimore City, in which it prayed the court "to require the above mentioned defendants to answer this bill of complaint and disclose the amount of assets of the said estate of the said Corinne B. Greenleaf that were actually received by them, and that the said defendants may further be required to bring into this honorable court the entire amount of assets so received by them to the end that your orator's claim may be paid in full with interest, and the balance of said assets, if any, be redistributed to the said defendants in accordance with their several interests therein." The

defendants severally demurred to that bill and, the demurrers having been overruled, they have taken this appeal.

As a result of the form in which the case comes before us we have assumed that the allegations of fact in the bill of complaint are true, and from those facts the following questions of law arise: First: Has the appellee the right to require the distributees of the estate of Corinne B. Greenleaf to reimburse it from the amounts of money respectively distributed to them under the deed of trust for its purchase of the West Virginia bonds which Brown Brothers gave the holders of the original debt certificates in exchange therefor? Second: Has a court of equity jurisdiction to enforce such a right? and, Third: Are the allegations of the bill of complaint sufficient to invoke the exercise of that jurisdiction? And these questions we will now consider in their order.

The appellants deny that the surety on the $40,000 bond is entitled to be reimbursed from the monies paid by the estate of Corinne B. Greenleaf to the distributees named in the deed of trust for its purchase of the West Virginia bonds, because, they say, there was no consideration for the $40,000 bond, and the payment made by the bonding company for the purchase of the West Virginia bonds was voluntary, and imposed no obligation upon the principal to reimburse it for the money thus expended. They rest that contention upon the proposition that, upon the execution and delivery by Abner Greenleaf of the $20,000 bond to Brown Brothers, they were bound to deliver the requisite amount of Virginia debt certificates in any "form necessary to make a good delivery" without requiring a new bond, and that in delivering the "new original" certificates they only did what they were already bound to do and that, consequently, the new bond given by Miss Corinne B. Greenleaf was unnecessary, without consideration and void.

We do not agree with that proposition for several reasons. First, because if Brown Brothers were obliged by their con-

tract to issue "new original" certificates upon the execution of the bond given by Abner Greenleaf, and Miss Greenleaf intended to rely upon that proposition, she should have asserted it before she executed the new bond; and second, because the record does not show that Brown Brothers undertook, in consideration of the first bond, to do anything but what they did do, that is to execute "duplicate" and not "new original" certificates.

Whether Brown Brothers were legally justified in demanding the execution of a new bond as a condition precedent to issuing "new original" certificates, or whether the bonding company was bound to indemnify them against loss if they had issued new and not duplicate certificates to Abner Greenleaf, are questions not material to this inquiry, since in fact Brown Brothers did make such a demand, and Miss Greenleaf, instead of resisting it, as the appellants say she might have done, acquiesced in it and agreed to and did execute the new bond. And it was in furtherance of that undertaking that she applied to the bonding company to act as her surety on the new bond, and in her application to it she expressly agreed to indemnify the bonding company against "any and all liability asserted against said company" and against all loss or liability which it might sustain as a result of its execution of the new bond, and in the transaction in which the new bond was executed the old bond was surrendered and cancelled, and the liability of the parties thereto terminated. It was therefore at her request, and in consideration of her express promise to indemnify and save it harmless against any and all liability that might be "asserted" against it in consequence of its execution of the new bond, that the bonding company did act as surety thereon. The condition of that bond, which she executed as principal, was that Corinne B. Greenleaf would indemnify Brown Brothers against any loss which they might sustain through issuing "new original" negotiable certificates in lieu of those lost or destroyed, and the bonding company at her request

guaranteed her performance of that undertaking. No matter what rights she may have had against Brown Brothers growing out of the execution of the bond by Abner Greenleaf, she certainly could not have been permitted, under such circumstances, as against the bonding company, to say that her bond was without consideration and void. And even if Brown Brothers had agreed, in consideration of the execution of the original bond, to issue new original certificates negotiable and deliverable under the rules of the New York Stock Exchange, and failed or refused to do so, that contract could have been, as it was, abrogated and a new contract made in reference to the same subject matter. The new contract was intended to be in substitution of the old one, for while the first related to the issuance of "duplicate" certificates, and the second provided for the issuance of "original" certificates, they both were designed to accomplish the same purpose. But the parties to the first contract appear to have agreed that what it provided for and what was done under it was a futile and nugatory thing and that it should therefore be abrogated and a new contract made for the performance of such acts as might be necessary to effect the intention and purpose of the parties in procuring new negotiable and valid certificates in place of those which had been lost. That they could under such circumstances abrogate the old contract and make a new one is, we think, clear. *Elliott, Contracts*, par. 1865. And that is what the parties appear to have done in this case. But whether they did or not, or whether Miss Greenleaf was or was not obliged to execute the new bond, she could not, nor can her representatives now, in a suit by the bonding company for loss sustained through a breach of the condition of the bond, repudiate her express promise to indemnify it against such loss when that promise was the consideration for the execution of the new bond, nor can it be affected by the status of contracts between the principal and the obligee, not set out in the bond and entirely collateral to the contract between

the principal and the surety, of which, so far as the record discloses, it had no knowledge. If the $40,000 bond was valid and enforceable, and in our opinion it was, then the act of the surety thereon in purchasing the West Virginia gold bonds upon the demand of the obligee was not voluntary but in compliance with the obligation of the bond. At the time it made that purchase, the "lost" certificates had been found and were in the hands of holders in due course who had presented them to Brown Brothers for exchange. Brown Brothers were in consequence required to give both to the holders of the lost certificates and the holders of the new certificates the value thereof in gold bonds, that is, it was obliged to pay twice for the same debt. It was in that position because it had at the request of Miss Greenleaf issued the new certificates. Since the very contingency upon which the bond was based had occurred, it was justified in calling upon the surety named in that bond to save it from loss through that contingency, and upon that demand the surety was warranted in taking such steps as were necessary to save the obligee named in the bond from loss. 21 *R. C. L.* page 1102; *Pingrey, Suretyship & Guaranty,* par. 199; 32 *Cyc.* 256.

And for the payment thus made the surety was entitled to be reimbursed by the principal. 21 *R. C. L.* page 1097. And if at the time the right to reimbursement accrued the principal was dead, the right could have been asserted against her estate, 32 *Cyc.* 250. And if the estate had been distributed when the right accrued, it could have been, as it was, asserted against the distributees of her estate. *Zollecoffer* v. *Seth,* 44 Md. 359; 18 *C. J.* 954, notes 11 and 12.

Assuming then that the surety is entitled to reimbursement from the distributees of the principal's estate, his right to seek that relief in a court of equity cannot, upon the authority of *Zollecoffer* v. *Seth, supra,* be questioned in this State, and the rule there stated appears to be consistent with the weight of authority elsewhere. 24 *C. J.* 540, note 18.

The case of *Edes* v. *Garey*, 46 Md. 24, upon which the appellants rely in denying the jurisdiction of a court of equity to grant the relief prayed, is hardly in point, since that was a case in which residuary legatees sought to enforce the personal liability of the sureties on a testamentary bond. Nor has our attention been called to any case which qualifies the rule stated in *Zollecoffer* v. *Seth, supra*.

The next question presented is whether, conceding that the appellee is entitled to enforce its right to have the distributees of the estate of Corinne B. Greenleaf reimburse it for its purchase of the West Virginia bonds out of the amounts distributed to them in a court of equity, are the allegations of the bill of complaint sufficient to warrant the relief prayed in this case.

The prayer of the bill is that "the defendants" be required to bring into court the entire amount of assets distributed to them, that the appellee's claim may be paid in full from them. But the defendants are not all of the distributees of the estate, and while in the appellee's brief it is said that those not joined as defendants are non-residents of the State, that fact does not appear in the bill of complaint, and we cannot therefore treat it as incorporated therein. The rule, as stated in *Zollecoffer* v. *Seth, supra*, is that under the circumstances of this case each distributee is liable to make contribution in proportion to the amount received by him, and while the rule as thus stated is subject to the qualification that, in enforcing the right to contribution against distributees, only those who are solvent and within reach of the court's process will be considered in determining the extent to which the several distributees before the Court will be required to contribute (*McClurg* v. *Seig*, 66 L. R. A. 884), nevertheless all distributees within the jurisdiction of the court, not insolvent, should be made parties to such a proceeding. 24 C. J. 542. And since several of the distributees are not made parties and since there is nothing before us to indicate that they are insolvent or non-residents, the bill is

defective in that respect. The cases cited by the appellee cannot affect that conclusion, since they are all predicated upon the presumption that the distributees not joined as defendants were either insolvent or beyond the jurisdiction of the court, whereas in this case no such facts appear.

Since however the bill is in all other respects sufficient, it will not be necessary to reverse the decree, since if it appears from the proof in the case that there are distributees solvent and within reach of the process of the court, who are not parties to this suit, they can either be brought in as defendants, or the amounts distributed to them can be considered in determining the amounts which the defendants in this case shall be required to contribute towards reimbursing the complainant for the money expended by it in discharging the obligation of the bond.

> *Decree affirmed and cause remanded for further proceedings in accordance with this opinion, the costs in this Court to be paid by the appellants.*