OSCAR VON LINGEN ᴇᴛ ᴀʟ., E�xᴇᴄᴜᴛᴏʀs, *v.* W. R. MASON FIELD ᴇᴛ ᴀʟ.

[No. 28, January Term, 1928.]

*Decided April 4th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*David Ash,* with whom was *John C. Kump* on the brief, for the appellants.

*R. E. L. Marshall,* with whom was *Charles H. Carter* on the brief, for the Safe Deposit and Trust Company, appellee.

URNER, J., delivered the opinion of the Court.

The fundamental question in this case is whether the share of an American residuary legatee, to whom, during the period of the European War, certain American securities belonging to a German estate were transferred by the executors, prior to the date of general distribution, should be charged in the final settlement with a large intervening appreciation of the American assets as valued in the depreciating German currency. The advancement was made in the course of the administration of the estate of Catherine Marie Von Lingen, who died in Bremen, Germany, in August, 1916, leaving a will which named her six nephews and two nieces as her residuary legatees with equal rights of participation. One of the nieces was Alberta L. Field (*née* Von Lingen), wife of Charles W. Field, of Baltimore, Maryland. The testatrix, at the time of her death, was the owner of various stocks

and bonds of American corporations, in the custody of the firm of A. Schumacher & Company, of Baltimore, of which Carl A. Luederitz, one of the residuary legatees, was a member. In October, 1916, Mrs. Field requested the executors of her aunt's will to advance her $20,000 on account of her share of the estate, by transferring to her a portion of the American securities at their current market value. The executors consented to make the proposed advancement, but before it was made Mrs. Field died, in December, 1916, leaving a will by which she appointed her husband as executor and bequeathed to him "all moneys due and payable" to her "from any source." In February, 1917, Messrs. Schumacher & Company, acting under instructions from the executors in Germany, transferred to Mr. Field, as executor of his deceased wife's will, American railway bonds and stocks having a total market value of $19,788.75. It does not appear whether there was a payment of cash to the amount of the difference between the value of the securities delivered and the whole amount agreed to be advanced, but Mr. Field, as executor, acknowledged in writing that he had received "the sum of twenty thousand dollars ($20,000) equal in German money at the current rate of $68\frac{3}{8}$ to one hundred and seventeen thousand and one marks and eighty-three pfennigs (Mk. 117001 83/100) as a partial payment on account of the legacy given to said Alberta L. Field under the last will and testament of said Marie Von Lingen." It was stated in the receipt to be the understanding that the balance of the legacy of Mrs. Field should be paid to her husband as the executor of her will as soon as the estate of her aunt should be finally settled and the amount of Mrs. Field's share ascertained. The receipt contained the following agreement by Mr. Field, in his capacity as executor: "It being further understood that in the event the above amount already paid to me shall upon final settlement of said estate of said Marie Von Lingen be shown to be more than the total amount of the legacy due to said Alberta L. Field, then I am to repay the said Eberhard Noltenius, executor of Marie Von Lingen whatever amount has been paid to me over and

above the full amount due to said Alberta L. Field, or her estate, from the estate of said Marie Von Lingen."

In the administration of his wife's estate, Mr. Field charged himself as executor with assets aggregating in value $191,631.64, including $20,000 "received of executors of Marie Von Lingen on account of legacy due to said Alberta Luise Field prior to her death," and that sum, under the same identification, he distributed to himself as part of the bequest to him, by his wife's will, of all money to which at the time of her death she was entitled. The residuary estate of Mrs. Field was applied to the purposes of a trust which her will created, and which is being administered by the Safe Deposit & Trust Company of Baltimore.

Mr. Field died in May, 1917, leaving a will by which he bequeathed his residuary estate, valued at $26,398.30, to his brother, W. R. Mason Field, by whom it was received, less a collateral inheritance tax, from Charles H. Carter and R. E. Lee Marshall, executors of the will, in July, 1918. The other legacies under Mr. Field's will amounted to $19,-550. In the settlement of the estates of Mr. and Mrs. Field, no reservation was made to meet the contingency, mentioned in the receipt we have quoted, of a possible ascertainment in the final settlement of the estate of Marie Von Lingen that the advancement made to Mr. Field, as executor of his wife's will, exceeded the real amount of her share.

On November 1st, 1919, a distribution was made by the executors of Marie Von Lingen's will among all of her residuary legatees. This was not a complete division of the estate, but it included a large proportion of the assets. Each of the legatees in Germany had previously received 12,875.01 marks on account of their respective shares, and those payments, added, at the time of the distribution, to relatively small amounts of German government and corporate bonds, and about 220,000 marks in cash, made a total of 295,000 marks for each legatee, less a deduction for an inheritance tax. In that distribution Mrs. Field was awarded 29,324.17 marks in German securities and 102,041.81 marks in cash,

and her inheritance tax, paid by the executors, was 30,771.94 marks, making a total of 162,137.92 marks charged to her share of the estate, in addition to the American securities previously delivered, which at the time of their transfer were valued at 117,001.83 marks, as already noted. The total of the advancement in February, 1917, and the distribution in November, 1919, to Mrs. Field's estate, according to the values of the marks at those respective periods, approximated the amount distributed in 1919 to the other residuary legatees. Apparently no allowance was then made by the German executors for the fact that the American securities had a much higher value on November 1st, 1919, than in February, 1917, as expressed in German marks, and that the cash belonging to the estate had a much lower value at the latter than at the former period, as measured by the American dollar standard. But it does not appear that the additional funds and other assets, allotted to Mrs. Field's share in November, 1919, have ever passed out of the executors' possession. Because of the rapid decline of the mark in exchange value, the American securities, which were worth 117,000 marks in February, 1917, could have been sold for 621,200 marks on November 1st, 1919, and 117,000 marks, which could be exchanged for $20,000 in American money or securities at the first mentioned period, were the equivalent of only $3,766.96 on the latter date, the mark having fallen in value from seventeen to three and a fraction cents.

There were supplemental distributions to all of the residuary legatees under the will of Marie Von Lingen on January 1st, 1920, and October 20th, 1921, under which each legatee received 23,000 marks in German bonds and cash. On February 6th, 1924, the executors filed a distribution account, which, according to a stipulation in the record, was the final settlement to which the receipt for the advancement in 1917 to the estate of Mrs. Field referred. In that account, for the purposes of equalization, the assets distributed to the residuary legatees were valued in marks and dollars, at the current rate of exchange as of the respective general distribution periods at or prior to which they were delivered

or paid. Thus the value of each of the other shares allotted on November 1st, 1919, was $9,497.74, while the assets then awarded and theretofore advanced to Mrs. Field's estate were worth $25,741.84. The two later distributions amounted to 23,000 marks, or $303.62, for each of the eight legatees, so that each received a total of $9,801.36 under the three distributions, except Mrs. Field's estate, which was found in the final settlement to be chargeable with allotments aggregating $26,045.46. When the last distribution was made, in October, 1921, the American dollar was valued in the account as being equal to 148 German marks.

It was reported by the executors in their 1924 account that they held certain Russian and Austrian securities then "of no divisible value," and that belonging to the estate, but subject to administration in Baltimore, were bonds and stocks of three designated American corporations of the total par value of $5,000, and 135 shares of the common stock of the Baltimore & Ohio Railway Company, the value of which was not specified, all of which securities, as stated by the executors, had been in the custody of the Baltimore firm of A. Schumacher & Company. In February, 1919, that firm had delivered the securities just mentioned to Carl A. Luederitz, as administrator *ad colligendum* of the estate of Marie Von Lingen, under appointment of the Orphans' Court of Baltimore City. In his account as such administrator, Mr. Luederitz charged himself with the assets received from Schumacher & Company at their appraised value of $10,100. He retained the corpus of the estate for further accounting, but the income was sufficient to permit a distribution of $92.73 as the share of each of Marie Von Lingen's residuary legatees, the share of those who were German citizens being paid to the Alien Property Custodian in compliance with his demand. Subsequently Mr. Luederitz was appointed administrator with the will annexed of the Maryland estate of Marie Von Lingen, and by his account filed in that capacity he provided for distributions amounting to $1,223.07 to the personal representatives of Alberta L. Field, deceased, "subject to account and set-off for sums advanced

on her distributive share" of the estate. The same reservation was made in the account of Mr. Luederitz, as administrator *ad colligendum*, with respect to the share of the income therein credited to Mrs. Field's personal representatives.

It appearing by the final settlement of Marie Von Lingen's estate, in February, 1924, that the share of Mrs. Field in the estate had been overpaid to the amount of $14,213.59, as expressed in a standard of monetary value which had been stable throughout the period of administration, the executors of the Von Lingen will wrote a few months later to the Safe Deposit & Trust Company, a legatee in trust under the will of Charles W. Field, in regard to the refunding of the overpayment, and later filed the pending bill in equity against the various legatees under the wills of Mr. and Mrs. Field, upon the theory that their legacies were charged with a trust for the purposes of the proposed reinbursement. Demurrers to the bill were filed by some of the legatees under each of those wills. Since no part of the assets received from the estate of Marie Von Lingen had benefited any of Mrs. Field's legatees except her husband, to whom those assets, or their proceeds, had been wholly distributed by himself as the executor of her will, the demurrers filed by some of her other legatees were properly sustained. All of the demurrers filed by legatees under the will of Mr. Field were overruled. For the purposes of the final hearing the material allegations of fact in the bill of complaint were admitted to be true. The decree dismissed the bill and directed that the funds held by Carl A. Luederitz, administrator of the local estate of Marie Von Lingen, with the will annexed, on account of the distributive share of Mrs. Field, be paid to the personal representatives of her estate.

In view of the continuing fall in value of the German mark, it is evident that, with respect to the distribution of the estate of Marie Von Lingen, time was a highly important factor. An equality of distribution could not be accomplished unless equal payments were made to all of the legatees at the same periods, or unless the results of any variation from that method were equalized in the final accounting.

It would have been manifestly unfair to discriminate permanently among the legatees in regard to prepayments, since the value of the shares would be materially affected by the time of their receipt. To give such an ultimate advantage to the American legatee, as against her German cousins, by the delivery to her of securities here of stable value, at a period when the funds or assets in Germany were declining in consequence of the great war in which that country was engaged, and in which our nation had not yet become involved, would have been particularly unjust. It is clear that the advancement in 1917 on account of Mrs. Field's share, if not subject to later adjustment, gave her a much more valuable portion of the estate than that received by any of the other distributees. Whether the value of the estate as a whole be measured in marks or in dollars, the advantage from a premature and unqualified payment is equally apparent. The American stocks and bonds delivered on account of Mrs. Field's share in 1917 at a valuation of 117,000 marks would have been worth nearly six times that amount in marks if they had been retained for the estate until the time of the general distribution in 1919. In comparison with the current values, at the payment periods, of the shares received by the German legatees, the advancement on Mrs. Field's share was unquestionably excessive.

A reasonable construction of the receipt given by Mrs. Field's executor, for the securities delivered in pursuance of her request, supports the theory that the final accounting to which it referred was intended to take into consideration the element of time as affecting the relative value of the assets advanced. It was recited in the receipt that the fund of $20,000, paid on account of Mrs. Field's legacy, was equivalent to 117,001.83 marks "at the current rate," and it was expressly agreed that if the amount so paid should be shown on the final settlement of the estate to be more than the total amount of Mrs. Field's share, the excess should be refunded. This provision is hardly consistent with an intent that the value of her share in the estate eventually distributable should be governed by the fortuitous fact that a pre-

payment on account of her share had been made at her request, and had been expressed in terms of marks on the basis of the higher rate of exchange then current. The fall of the mark between the time of the advancement and the period of general distribution, because of the war and its consequences, was in effect a proportionate destruction of the estate's value. If the general distribution had been deferred until the time of the final accounting in 1924, the cash assets of the estate, of which it mainly consisted, would have been practically valueless, and the shares of the other residuary legatees would have been of insignificant value as compared with the portion which the American distributee had obtained. If the large disparity which actually resulted from the advancement on that legatee's share is not subject to the adjustment attempted by the executors, the principle of equality which the testatrix sought to apply in the disposition of her residuary estate is rendered inoperative. The executors would have no authority thus to favor one of the legatees, and, in the final account to which the receipt for the American securities referred, they have endeavored, in accordance with their duty, to prevent such a preference.

The assets involved in the distributions made on or before November 1st, 1919, amounted to 2,864,530.80 marks, including the value of the American securities delivered to Mrs. Field's executor, which, with accrued interest, were worth 637,403.07 marks on that date at the rate of exchange then current. The share of each legatee as of that period of distribution should have been 358,697.60 marks, or $11,-528.25. This was $8,993.42 less than the amount, with interest to November 1st, 1919, of the advancement to Mrs. Field's estate, and $14,213.59 less than the total of $25,-741.84, with which her estate was then to be debited, according to the final account, and $2,030.51 more than the amount which each of the seven other legatees received as of that date. But if, as may be inferred, the executors of the Von Lingen will have retained the additional assets, amounting to 162,137.92 marks, or $5,220.17, apportioned to Mrs. Field's estate in 1919, and the funds awarded in 1920 and

1921 aggregating 23,000 marks, or $303.62, on account of her legacy, those assets could not properly be considered in estimating the overpayment on her share, and hence its true amount would be only $8,993.42. The overpayment is computable only with respect to the 1919 distribution, as the later division of assets observed the rule of equality. The funds amounting to $1,315.80, held for the account of Mrs. Field's estate in the hands of Carl A. Luedcritz, administrator *c. t. a.* of the Maryland estate of Marie Von Lingen, are applicable to the reimbursement claim, and it would be thus further reduced to $7,677.62.

On behalf of the legatees of Mr. Field, who in his individual capacity received the $20,000 advancement fund in course of administration under his wife's will, shortly before his death, it is urged that the executors of the will of Marie Von Lingen, who are acting solely by virtue of their foreign qualification, are not authorized to maintain the pending suit. It has been held by this court that executors who have not obtained letters testamentary in Maryland have no right to sue here upon a cause of action belonging to the testator. *Wright v. Gilbert,* 51 Md. 146; *Citizens Nat. Bank v. Sharp,* 53 Md. 521. But upon claims accruing to them after the testator's death, foreign executors or administrators may personally sue in the local jurisdiction, and the use of their representative titles may be disregarded as surplusage. 24 *C. J.* 1131; *Barton v. Higgins,* 41 Md. 539. In the case last cited the suit was on a judgment recovered by a foreign executor, while here it is on an agreement to refund an amount paid in excess of the recipient's share of an estate, but in both instances the causes of action arose after the testator's death and in favor of the personal representatives by whom the claims were sought to be enforced. The ruling by the lower court in favor of the plaintiff's right to maintain the suit was correct.

It is indisputable that the jurisdiction of a court of equity may properly be invoked for the recovery of sums which were paid on account of legacies upon the assumption, later found to be erroneous, that the value of the estate would be sufficient

to justify the payments. *Chestertown Bank v. Perkins*, 154 Md. 456; *Colonial Trust Co. v. Fidelity & Deposit Co.*, 144 Md. 117; *Zollickoffer v. Seth*, 44 Md. 359.

In some of the answers to the bill of complaint the defense of laches was interposed, but that question is not mentioned in the briefs. There was considerable delay in the final accounting which demonstrated the overpayment now sought to be recovered. But it is not to be assumed that, under the conditions existing in Germany from 1917 to 1919, the general distribution of the estate was unduly delayed. It is not shown that any beneficiary of Mr. Field's estate has been prejudiced because this proceeding was not more promptly instituted. The residue of that estate, which was more than sufficient to satisfy the present claim, was distributed, under the terms of Mr. Field's will, to his brother, W. R. Mason Field, who was not personally served with process, but as a nonresident defendant was only constructively notified of the suit by an order of publication. The amount of the claim asserted in this suit was not ascertained until the final accounting by the German executors, and that did not occur until the estate of Mr. Field had been fully administered and distributed to the legatees named in his will. But the claim is based upon his agreement to refund, and while his executors are exonerated, and in fact are not sued, because the claim was not presented before their administration was completed, and it does not appear that they were then aware of the agreement, the legatees were not similarly exempted from liability to contribute proportionately from their legacies to its payment, if there was no laches in its presentation after it had become enforceable. *Zollickoffer v. Seth; Colonial Trust Co. v. Fidelity & Deposit Co., supra.* Upon the present record, which includes the stipulation that the account of the plaintiffs filed in 1924 was the final account to which Mr. Field's receipt was intended to refer, but contains no evidence that there was unreasonable delay, under the circumstances, in the subsequent demand and suit for reimbursement, or that any of the defendants were prejudiced by the fact that the claim was not sooner asserted,

we have no sufficient ground for a decision that it is barred by laches. The information obtainable from the record does not enable us to determine definitely the extent of the plaintiff's rights or of the defendant's liabilities. The case will, therefore, be remanded for further proceedings and proof, to the end that a decree may thereupon be passed in accordance with the principles stated in this opinion.

*Decree reversed with costs, and cause remanded for further proceedings.*

---

On motion for reargument.

The opinion refers to the fact that prior to the general distribution of November 1, 1919, each of the German legatees had received from the executors an advancement of 12,875.01 marks. The date of those payments is not mentioned in the record. A motion for reargument suggests that they may have been made at a time when the mark had a much higher value than it represented at the date of the general distribution, and that to the extent of any advantage thus realized from such prepayments the shares of the German legatees should be subject to the same principle of equalization which we have decided to be applicable to the American legatee's advancement. That suggestion is not inconsistent with the opinion, which stated the inability of the court, upon the information obtainable from the record, "to determine definitely the extent of the plaintiff's rights or of the defendants' liabilities." For that reason the case was remanded for further proceedings and proof. A reargument upon the point made by the motion is unnecessary.

*Filed June 22nd, 1928.*