## I. PEARL SEGAFOOSE *v.* JOHN D. HOSPELHORN, RECEIVER

[No. 16, January Term, 1941.]

326

*Decided February 19th, 1941.*

The cause was argued before SLOAN, MITCHELL, JOHNSON, DELAPLAINE, and COLLINS, JJ.

*Leo Weinberg,* for the appellant.

*J. Purdon Wright,* submitting on brief, for the appellee.

JOHNSON, J., delivered the opinion of the Court.

This is an appeal by I. Pearl Segafoose, individually and as executrix of the estate of William Guy Segafoose, from the Circuit Court for Carroll County, in Equity, adjudging that William Guy Segafoose stood indebted to appellee and his successor in the receivership of the Baltimore Trust Company in the sum of $2250, with interest from November 13th, 1933, until paid, on account of 225 shares of stock of the Baltimore Trust Company, an insolvent banking corporation; further ad-

judging, ordering and directing that I. Pearl Segafoose, executrix of William Guy Segafoose, deceased, stood indebted to appellee and his successor in the receivership in the same sum as well as the costs of the proceedings to the extent of and binding the assets of the decedent remaining unadministered that previously had or subsequently might come into the hands, custody and possession of appellant, to the extent such assets were available and applicable to the payment of the common creditors of the decedent, and dismissing the bill of complaint as to Carroll County Savings Bank of Uniontown, one of the defendants. No contention being made by the appellant against that part of the decree dismissing the co-defendant, our consideration of this appeal will be limited to a consideration of the decree so far as it affects appellant.

That decree was passed after the chancellor had first overruled demurrers of the defendants to the bill of complaint, and after the case had been heard on bill, answer and testimony.

The allegations of the bill of complaint which for the purpose of testing their sufficiency on demurrer are admitted as true require some statement. The bill of complaint was filed by appellee against the parties heretofore named for the purpose of an accounting to ascertain (a) the exact status of the claim of Carroll County Savings Bank of Uniontown, one of the defendants, against the estate of William Guy Segafoose, and (b) to require appellant to declare the amount of assets of her decedent's estate that were actually received by her and compel her to bring into court the entire amount so received, to the end that appellee's claim, with interest, might be paid, and any balance distributed to the defendant in accordance with her interest therein.

It was alleged that on January 5th, 1935, John J. Ghingher, Bank Commissioner of the State of Maryland, pursuant to the provisions of Code, article 11, section 9, obtained the written consent of the Governor and the Attorney General to take possession of the property and

business of the Baltimore Trust Company; that as Bank Commissioner he thereupon took possession of its property and assets and a suit was instituted in the name of the State against the Baltimore Trust Company in the Circuit Court No. 2 of Baltimore City for the purpose of having the institution liquidated; that John D. Hospelhorn, Deputy Bank Commissioner, was substituted as receiver by the same court, after the trust company had consented thereto, with power and auhtority to take charge and possession of the books, papers and effects of every kind belonging to the corporation and to collect the outstanding debts due it.

In paragraph two, it was alleged that the court of his appointment had clothed the receiver with authority to liquidate all of the assets of the corporation and to collect under the court's direction the statutory liability of its stockholders and make distribution of the assets among its creditors.

Paragraph three charged that on November 13th 1935, the Circuit Court No. 2 of Baltimore City, pursuant to the provisions of section 72, Code, article 11, passed an order that an assessment of ten dollars per share on all the capital stock, which was of the par value of ten dollars per share, was necessary to meet the statutory liability of its creditors and thereby levied and imposed such an assessment and directed the receiver to demand and collect from the stockholders of the institution ten dollars per share for each share held by them and to take such proceedings and suits against all parties liable as might be necessary and advisable.

In paragraph four the receiver alleged that on March 4th, 1933, William Guy Segafoose was the holder and owner of 225 shares of the capital stock of the trust company of a par value of ten dollars per share, and since that time he had died and on October 6th, 1931, his will was probated in the Orphans' Court of Carroll County, Maryland; that in said will the testator directed that all of his property was to be distributed to his widow, I. Pearl Segafoose, until her death or remarriage,

and that although still living she has not remarried. It was also charged in the bill (paragraphs five and six) that the executrix had filed an inventory in the Orphans' Court, showing that 225 shares of the Baltimore Trust Company stock valued at $3.50 per share had come into her hands; that by an account filed by her she had shown that such stock was pledged to the Carroll County Savings Bank of Uniontown, which had filed a claim against the estate of her deceased husband. With the bill of complaint were filed Exhibits A to E, inclusive, showing (a) the order of the Circuit Court No. 2 of Baltimore City appointing appellee as receiver for the Baltimore Trust Company; (b) the order of the same court determining the necessity for and assessing the stockholders in the sum of ten dollars per share to meet the statutory liability of the stockholders of the trust company to the creditors of the latter and the direction to the receiver to collect such assessments by instituting proceedings for that purpose; (c) a certified copy of the last will and testament of William Guy Segafoose; (d) a copy of the inventory of his personal estate filed by his executrix in the Orphans' Court of Carroll County on February 18th, 1938 and (e) a paper filed by the executrix in the Orphans' Court of Carroll County on February 18th, 1938, purporting to be a first administration account in her husband's estate. Exhibit F was not filed with the bill, but by the administration account appellant charged herself with the sum of $12,812.70 as per inventory previously returned by her. She deducted therefrom the sum of $9200 representing at their appraised value 405 shares of New Amsterdam Casualty Company at twenty dollars per share, and 100 shares of U. S. Fid. & Guar. Company at eleven dollars per share, because prior to his death her decedent had assigned the certificates therefor to the Carroll County Savings Bank as collateral security for payment of obligations due by her decedent and which shares had, according to her statement in the account, been "erroneously appraised as a part of" his estate. This, according to the account, left in the hands

of the accountant $3629.70, against which she prayed allowances for expenses, including $300 for funeral charges, $150 for an allowance to herself as surviving spouse with infant children and $50 for medical attention rendered decedent in his last illness, plus expenses to the Register of Wills in the estate totaling the sum of $569.70, and leaving in her hands as the residue of the estate the sum of $3060.

From the above statement and exhibits, it appears that in the sum of $3060 retained by the accountant, the item of 225 shares of the Baltimoer Trust Company stock appraised at $3.50 ped ·share is included, and it is alleged in the bill that such shares were pledged to the Carroll County Savings Bank, and also disclosed by the inventory and account, but while this does not so appear in the inventory or account, the fact that the bank has some connection with such stock is shown from the pleadings.

Appellant insists that the chancellor erred in overruling the demurrer, because (a) that tribunal was without jurisdiction, inasmuch as appellee had an adequate remedy at law to enforce his claim against. the estate; (b) that the Circuit Court No. 2 of Baltimore City was without jurisdiction to pass any order or enforce any liability against appellant in her individual or representative capacity; (c) that there is a misjoinder of parties.

As to the last contention it is sufficient to say that it does not definitely appear from the allegations of the bill of complaint and exhibits filed therewith that there is a misjoinder of parties, because it is inferable from the pleadings that the bank has some connection with the stock.

Nor is the contention sustainable that the Circuit Court No. 2 of Baltimore City was without jurisdiction to levy the assessment sought to be enforced herein, inasmuch as such authority has been upheld by this court in the following cases: *Ghingher v. Bachtell,* 169 Md. 678, 182 A. 558; *Robinson v. Hospelhorn,* 169 Md. 117, 179 A. 515, 184 A. 903; *Hospelhorn v. Poe,* 174 Md. 242, 198 A. 582.

The contention most strongly urged in favor of sustaining the demurrer is that appellee, in order to enforce the assessment by the Circuit Court No. 2 of Baltimore City should have proceeded at law and that such a suit is not under any circumstances permissible in equity. Much reliance is placed upon the decision of this court in *Allender v. Ghingher,* 170 Md. 156, 183 A. 610. In that case we were considering the right of a receiver to maintain a suit in equity against stockholders of a defunct banking institution to enforce their statutory liability under Code, art. 11, sec. 72, the assessment being 100 per cent of the par value of the stock held by them. No other problem was involved and it was simply a question of whether such liability could be enforced by a decree of the Circuit Court for Frederick County, in equity, against two groups of stockholders of a defunct banking institution. In one case the bill of complaint was filed against ninety-five stockholders, while in another it was against sixty-five, many of whom reresided beyond the confines of Frederick County. While in the situation considered it was held that the stockholder's statutory liability was not enforceable in this manner, reference to paragraph eight and the concluding paragraph of that opinion discloses that there existed no problems of a nature requiring a resort to equity. There is nothing in that opinion in conflict with the doctrine generally recognized that when equity jurisdiction has once validly attached for one purpose, it will be retained so as to finally adjudicate and settle all questions arising out of the subject matter in controversy and thus preventing a number of conflicting proceedings about the same question.

In this case the amount of the estate in the hands of decedent's personal representative is the subject matter concerning which an accounting is sought as well as a direction as to its application. Because of this, equity being the proper forum in which to invoke the remedy for an accounting, the rule above mentioned of retaining jurisdiction so acquired, to the end that all questions arising out of the subject matter can be completely de-

cided has direct application. *Keighler v. Ward*, 8 Md. 254, 266; *Safe Deposit Co. v. Baker*, 91 Md. 297, 46 A. 1071; *Poe v. Munich Re-Insurance Co.*, 126 Md. 520, 95 A. 164; *Boland v. Ash*, 145 Md. 465, 478, 125 A. 801; *Pomeroy's Equity Jurisprudence*, secs. 182, 230, 231, 232.

Another contention advanced in support of the demurrer is that appellee's claim is barred by limitations. Code, art. 11, sec. 97, providing for the libality of stockholders of banks and trust companies to the extent of the amount of their stock therein at its par value in cases when such liability must be enforced for the benefit of depositors and creditors of the insolvent corporation, contains no express period of limitations as to when such liability may be enforced, but we held in *Sterling v. Reecher*, 176 Md. 567, 6 A. 2nd 237, that the liability, being statutory, is to be regarded as a specialty under the provisions of Code, art. 57, sec. 3, and that the period of limitations for its enforcement is twelve years.

We conclude that nothing appears in the bill of complaint to enable us to say that appellee's claim is barred by limitations. It may also be stated that the bill of complaint shows nothing to enable us to hold that laches will preclude the plaintiff from relief.

In our opinion the chancellor below correctly overruled the demurrer to the bill of complaint.

A reading of the testimony contained in the record has convinced us that appellant's decedent, who died September 29th, 1931, owned at the time of his death 225 shares of the trust company's stock at the par value of $10 each. He died testate and was seised and possessed of both real and personal property, which, after payment of his debts and funeral expenses, he devised and bequeathed unto his wife for life and widowhood, with full power during the continuance of her estate to collect rents, income and profits and apply to her own use and, after her death or marriage, then over to their children and the issue of any deceased children. The widow was given full power to sell and convey and reinvest the proceeds. She was named the sole executrix and after qualifying proceeded with the administration of her husband's estate.

The 225 shares of the Baltimore Trust Company stock were appraised at $3.50 per share, totaling $787.50. On November 10th, 1931, an inventory was returned and the total appraised value of the personalty was $12,812.70, but testator's estate was owing large sums of money. His real estate was mortgaged, and according to the undisputed evidence the bulk of his personal estate consisted of shares of stock, much of which was pledged as collateral for large loans previously made him by the Carroll County Savings Bank of Uniontown. None of the Baltimore Trust Company shares were pledged. In January and May, 1932, claims totaling $17,599 were passed by the Orphans' Court against the estate. One item of $24 was due a fertilizer company, $2000 was due the First National Bank of Westminster, and the balance of $15,-575 in the form of seventeen notes was due the Carroll County Savings Bank of Uniontown.

Except for an account stated on February 12th, 1934, it does not appear that any other account has been stated by the executrix, and, as observed by the chancellor below, that account is really an expense account, because the executrix, charges herself with only two items. The first is $17, which was money left by her decedent, while the second, $3612.70, is the appraised value of goods and chattels, amounting to $12,812.70, less the appraised value, amounting to $8100, of 405 shares of the New Amsterdam Casualty Company, and the appraised value of $1100 of 100 shares of the U. S. F. & G. Company. The total of the first and second items is therefore $3629.-70, and in this is included at their appraised value $787.50, the 225 shares of stock of the Baltimore Trust Company.

In that account the aggregate of allowances is $569.70. This embraces the items previously stated and a balance in the hands of the executrix for final accounting of $3060, included in which is the amount of $787.50, representing the appraised value of the stock of the Baltimore Trust Company. Although no other accounting has been had in the estate, the proof discloses that the mortgage

lien on the real estate was foreclosed and some of the collateral and proceeds applied to debts to the extent that in June, 1939, the unpaid claims against the estate apart from its obligation of the assessment on the shares of The Baltimore Trust Company stock were as follows:

Frederick Mehring Fertilizer Works, account $24, note of the First National Bank of Westminster $1000, principal amount due on notes of Carroll County Savings Bank of Uniontown $4375, making a total of $5,399, without computation of interest, and the Carroll County Savings Bank of Uniontown still retains as collateral the 405 shares of stock of New Amsterdam Casualty Company.

In addition to certain items of household furniture and stock, appellant is charged with the appraised value of 12 shares of stock of the Fidelity & Deposit Company, and 25 shares of stock of the Carroll County Savings Bank, according to the inventory returned by the appraisers, but from her testimony, it is disclosed that she has sold all the personal estate and applied the proceeds to the payment of debts of the estate, except the 12 shares of Fidelity & Deposit Company stock and 25 shares (now reduced to 18¾ shares, because of reorganization) of the Carroll County Savings Bank and any excess of the collateral held by the Savings Bank over the amount due it. It further appears that Mrs. Segafoose transferred to herself a Chevrolet Sedan, appraised at $250.

It is plain that the 225 shares of stock in the Baltimore Trust Company are a liability of the estate, because that corporation was insolvent on March 14th, 1933, but was permitted to do business on a restricted basis until January 5th, 1935, when the receivership of the trust company began. On that date the Circuit Court No. 2 of Baltimore City assumed jurisdiction of the affairs of the trust company for the purpose of liquidation and, pursuant to the provisions of Code, art. 11, sec. 72, on November 13th, 1935, laid an assessment of ten dollars per share on the capital stock of the trust company, the equivalent of its par value, and it is also clear that such

assessment was necessary to meet the statutory liability of the stockholders to the trust company's creditors. This obligation has not been satisfied in whole or in part, and the estate is indebted in this amount. This being true, the executrix must be held accountable to the extent of assets available for that purpose.

It is also undisputed that the estate of William Guy Segafoose has not been finally administered, although much of the property, including the real estate, has been liquidated, and except for the Chevrolet Sedan which the administratix transferred to herself and the few items of costs, doctor's bill and $300 applied toward the funeral expenses, the balance realized has, according to the testimony, been paid over directly to Carroll County Savings Bank of Uniontown and the First National Bank of Westminster. We think it also clear that Mrs. Segafoose is not entitled to have any of the property distributed to herself under her husband's will until his debts are paid, for as said by this court in *Baker v. Cooper,* 166 Md. 1, 170 A. 556, 561:

"The personal assets of a testator or intestate are impressed with a trust to pay the debts of the decedent, which an unpaid creditor has a right to have administered for his benefit. It is upon the ground of such a trust that the jurisdiction of a court of equity primarily rests in the administration of the estate, and in bills brought against executors, administrators, or, after delivery or payment, against legatees or distributees for the purpose of charging them with a liability to have applied the personal assets of the decedent received to the payment of his debt. *Zollickoffer v. Seth,* 44 Md. 359, 373-375, 379; 2 *Williams on Executors,* pp. 797-800 (1314 star) ; *Hodges v. Waddington,* 2 Ventr. 360; *Borer v. Chapman,* 119 U. S. 587, 7 S. Ct. 342, 30 L. Ed. 532, 537; *Van Bibber v. Reese,* 71 Md. 608, 618, 18 A. 892; *Alexander v. Leakin,* 72 Md. 199, 204, 19 A. 532; *Colonial Trust Co. v. Fidelity* [*& Dep.*] *Co.,* 144 Md. 117, 127, 128, 123 A. 187; *Von Lingen v. Field,* 154 Md. 638, 647, 648, 141 A. 390, 927.

"If the decedent's funds are not sufficient to pay the debts, the right is clear that an unsatisfied creditor or claimant can compel a legatee or distributee to refund, whether the legacy or distributive share was paid to him voluntarily or by compulsion, and although the assets were delivered to the legatee or distributee by the personal representative in ignorance of the creditor's or claimant's demand. The right may, however, be lost by force of statute, laches, or such a course of dealing as would render the assertion of such right unequitable. 2 *Williams on Executors*, p. 797 (1314 star)."

Inasmuch as the executrix has consistently applied all funds of the estate received by her toward payment of the claims of two of the creditors and paid nothing upon appellee's claim, such conduct is of itself sufficient to justify the equity court in taking jurisdiction for the purpose of an accounting, and, having acquired such jurisdiction, to adjudicate all claims involved in the subject matter and as well to direct distribution of the funds belonging to the estate amongst its creditors according to their respective rights and interests.

In regard to appellant's contention that payment of the receiver's claim was refused more than nine months before institution of this suit, it is sufficient to say that no proof of this is shown by the record. Appellant also insists that because appellee failed to institute this suit until February 18th, 1938, although the first administration account had been filed four years previously, this delay has caused great injustice and prejudice to her, but with this contention this court does not agree. The estate is still unsettled and the claim of appellee is as much entitled to be paid as are claims of other common creditors of the estate, and if, as may be inferred from the record, appellant without knowledge of appellee's claim paid to other common creditors of the estate sums of money, which, had the claim been known to her, exceeded the amount properly distributable to them, a court of equity is the proper tribunal to take jurisdiction in the premises for the purpose of an accounting, inasmuch

as the remedy in that forum is ample to pursue such assets representing overpayment to other common creditors of the estate. Moreover, there is no showing that the alleged depreciation in values of the stock still held by appellant for the estate did not occur even before this suit was instituted, and, so far as this court sees, appellant was at all times prior to the institution of this suit under no disability to convert the stock into cash had she elected so to do. Entertaining this view, it cannot be said to appear that the doctrine of laches has any application in the present case. See *Zollickoffer v. Seth,* 44 Md. 359.

For the reasons hereinbefore stated, we feel that the decree appealed from was correct and must be affirmed.

*Decree affirmed, with costs*